**STATE of Missouri, Respondent,**

v.

**Richard C. WALDEN, Appellant.**

**Richard C. WALDEN, Appellant,**

v.

**STATE of Missouri, Respondent.**

Nos. WD 45611, WD 46836.

Missouri Court of Appeals,
Western District.

Sept. 7, 1993.

Gary E. Brotherton, Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Breck K. Burgess, Asst. Atty. Gen., Jefferson City, for respondent.

Before BERREY, P.J., and
BRECKENRIDGE and HANNA, JJ.

BRECKENRIDGE, Judge.

Richard C. Walden (Walden) appeals from his conviction for receiving stolen property valued at more than $150, § 570.080, RSMo 1986,[1] for which he was sentenced, as a prior and persistent offender, to eight years imprisonment. He also appeals the motion court's denial of his Rule 29.15 motion for postconviction relief. Walden raises three points on appeal arguing that: 1) the motion court erred in denying his Rule 29.15 motion because he was denied effective assistance of counsel due to a conflict of interest; 2) the trial court erred in allowing the introduction of hearsay evidence regarding Walden's knowledge as to whether certain property was stolen; and 3) the trial court erred in submitting Instruction 4 to the jury, defining "proof beyond a reasonable doubt" as "proof that leaves you firmly convinced of the defendant's guilt," because such definition violates the due process clause.

The conviction and the judgment on the postconviction motion are affirmed.

On February 3, 1991, the home of Rudy Dyer of St. Louis, Missouri, was burglarized. Among the items taken were a Rolex watch engraved with the victim's name and date of birth worth approximately $1,250, a Masonic double-eagle ring valued at $150–$200, a two-carat emerald worth about $2,000–$2,500, and a .45 nickel-plated World War II commemorative pistol with an inscription reading "World War II Commemorative. Pacific Theater of Operations."

On February 11, 1991, Brian Piester, a detective in the property unit of the Columbia, Missouri Police Department, received information regarding suspicious jewelry sales made by Walden and Patrick Kelly in Columbia, Missouri. Shortly thereafter, Walden was arrested by Piester and Detective Thomas Dresner. At the time of his arrest, he had on his person the Rolex watch and the Masonic double-eagle ring, later identified as belonging to Dyer. The driver's license of Kelly was found in the pocket of the jean jacket Walden was wearing when he was arrested. Pursuant to Walden's consent, Piester searched Walden's car and discovered the two-carat emerald belonging to Dyer.

Walden was handcuffed and taken to the police station to be interviewed. Walden told the officers that he met Kelly while undergoing drug rehabilitation treatment at a hospital in Fulton, Missouri. Walden indicated that Kelly had given him the Rolex and other property in return for Walden driving Kelly around Columbia to jewelry stores. Walden informed the officers that Kelly told him the property had been taken during a burglary in St. Louis approximately two weeks prior to the events at issue. The officers also learned from Walden that Kelly could be found at the home of Walden's son, Craig Walden.

1. All statutory citations are to Revised Missouri Statutes 1986, unless otherwise indicated.

Piester and another detective went to Craig Walden's home. After knocking on the door, Piester heard shuffling noises and, about a minute later, Craig Walden opened the door. Kelly was standing behind him. Piester talked with Craig Walden and received permission to search the house. Craig Walden testified that he had not invited Kelly or his father to stay at his home but that he had returned from staying with his grandparents for a few days to find that they had been staying in his house. Craig Walden told Piester that, when the police arrived, Kelly had been showing him guns and jewelry, some of which Kelly and Walden had hidden throughout the house before Craig Walden came home. Piester testified that Craig Walden told the officers that Kelly had asked him for assistance in selling the items which Kelly said were from a burglary in Chicago. Piester also testified that Craig Walden stated that Walden had been present during the conversation regarding the origin of the items. During the search of his home, Craig Walden helped the officers find the .45 caliber commemorative pistol stolen from the Dyer residence, along with other weapons and jewelry. The officers arrested Kelly at Craig Walden's home.

On August 7, 1991, Walden was found guilty by a jury of receiving stolen property valued at more than $150 pursuant to § 570.-080. He was sentenced, as a prior and persistent offender, to eight years imprisonment. Walden filed a pro se Rule 29.15 postconviction motion on February 4, 1992. An amended motion for postconviction relief was filed on April 6, 1992. After an evidentiary hearing was held, the motion court denied Walden's postconviction motion. Walden appeals both from his conviction and from the denial of his motion for postconviction relief.

In Point I, Walden argues that the motion court erred in denying his Rule 29.15 motion for postconviction relief because he received ineffective assistance of counsel. Walden asserts that his original attorney, assistant public defender Michael Anderson, represented his co-defendant, Kelly, at Kelly's preliminary hearing which created an actual conflict of interest. Walden further argues that this conflict of interest was imputed to his trial attorney Andrew Hernandez, who was the district public defender and Anderson's supervisor. Walden claims he was adversely affected by the conflict of interest because Hernandez did not subpoena for trial his former client, Kelly, and his failure to do so prevented Walden from presenting exculpatory evidence.

In reviewing the denial of a Rule 29.15 motion, this court is limited to a consideration of whether the findings and conclusions of the trial court are clearly erroneous. *State v. Ervin*, 835 S.W.2d 905, 928 (Mo. banc 1992), *cert. denied*, — U.S. ——, 113 S.Ct. 1368, 122 L.Ed.2d 746 (1993). After a review of the entire record, the motion court's findings and conclusions will only be found to be clearly erroneous if this court is left with the definite and firm impression that a mistake has been made. *Id.*

A movant bears a heavy burden in establishing a claim for ineffective assistance of counsel and must overcome the court's presumption that counsel is competent. *Amrine v. State*, 785 S.W.2d 531, 534 (Mo. banc 1990), *cert. denied*, 498 U.S. 881, 111 S.Ct. 227, 112 L.Ed.2d 181 (1990). A movant must satisfy the following two-part test to prove a denial of the right to effective assistance of counsel on conflict of interest grounds: 1) counsel actively represented conflicting interests; and 2) the actual conflict of interest adversely affected counsel's representation of movant. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *Amrine*, 785 S.W.2d at 535. To establish an actual conflict of interest, movant must show that counsel did something or failed to do something which was detrimental to movant's interests and advantageous to the person whose interests conflict with movant's interests. *Yoakum v. State*, 849 S.W.2d 685, 689 (Mo.App.1993). Prejudice is presumed only if the movant establishes both prongs of the *Strickland* test. *Amrine*, 785 S.W.2d at 535.

It is unnecessary for this court to decide whether an actual conflict of interest existed because Walden has not proved that he was adversely affected by counsel's representation of Kelly, which is the second prong of the *Strickland* test. Walden argues that he was adversely affected because the conflict of interest caused Hernandez to not call Kelly as a witness even though Hernandez had information from another potential witness that Kelly could exculpate Walden. Walden also argues, in the alternative and inconsistently, that Hernandez should have called Kelly as a witness so that if his testimony was unfavorable to Walden, Walden could have impeached Kelly's testimony with evidence of prior inconsistent statements Kelly made to Robert Stapelton, an inmate in the Missouri Department of Corrections.

To demonstrate that defense counsel was ineffective for failing to call a witness to testify, the movant must prove that: 1) the decision not to call the witness was something other than reasonable trial strategy; 2) the witness could have been located through reasonable investigation and would have testified if called; and 3) the witness's testimony would have provided movant with a viable defense. *State v. Buchanan*, 836 S.W.2d 90, 93 (Mo.App.1992). On appeal, counsel's decision not to call a witness is presumed to be a decision of trial strategy and will not support the overturning of a conviction on the basis of ineffective assistance of counsel unless proved otherwise. *State v. Patterson*, 826 S.W.2d 38, 41 (Mo.App.1992); *Odom v. State*, 783 S.W.2d 486, 487–88 (Mo.App.1990).

Walden does not present evidence that Kelly's testimony would have provided him with a viable defense if Kelly had been called as a witness. Although he argues that Kelly's testimony would have been exculpatory, the record provides information which contradicts such a contention. Evidence in the record suggests that Kelly, had he been called as a witness, would have testified that Walden knew the property was stolen. If counsel reasonably believes a potential witness will not unqualifiedly support his or her client's position, a decision not to call that person as a witness is a reasonable trial strategy choice. *Odom*, 783 S.W.2d at 488. Walden has not established a claim for ineffective assistance of counsel because he has not proved that Kelly's testimony would have provided a viable defense. *Buchanan*, 836 S.W.2d at 93.

Walden's second argument under his Point I, that he received ineffective assistance of counsel because Hernandez failed to call Robert Stapelton as a witness, is also without merit. Robert Stapelton was allegedly to testify that, while he and Kelly were both in the Boone County Jail, Kelly had told him that Walden did not know the property was stolen but Kelly was going to make sure that Walden was blamed for the crime. Hernandez testified that Stapelton's testimony was inadmissible hearsay but that he had hoped to use the statements to impeach Kelly's testimony if Kelly denied making the statements to Stapelton. Kelly was not endorsed or called as a witness by the prosecution. Walden asserts that Hernandez should have subpoenaed Kelly and did not do so because the public defender's office had been Kelly's preliminary hearing counsel.

This court has already found that counsel's decision not to call Kelly as a witness was a trial strategy decision and did not constitute ineffective assistance of counsel. Walden's alternative argument that Kelly would have given adverse testimony which could have been impeached by Stapelton's testimony does not change this court's finding. Stapelton's testimony of Kelly's prior inconsistent statements would have been inadmissible to impeach Kelly's testimony even if Hernandez had called Kelly as a witness. The Missouri Supreme Court, in *State v. Byrd*, 676 S.W.2d 494, 502 (Mo. banc 1984), *cert. denied*, 469 U.S. 1230, 105 S.Ct. 1233, 84 L.Ed.2d 370 (1985), restates the general rule that a party may not impeach its own witness in either a civil or a criminal case unless the following two requirements are met: 1) the witness's testimony must surprise the party who called the witness; and 2) the witness's testimony must be such that the witness, in effect, becomes a witness for the opposing party. In *Rowe v. Farmers Ins. Co., Inc.*,

699 S.W.2d 423, 425 (Mo. banc 1985), the Court reversed this rule as to civil cases but left the criminal portion of *Byrd* intact. It remains the law in Missouri in a case such as the instant case that a party may not impeach the testimony of its own witness unless the party shows that it was surprised by the testimony and that the witness has essentially become a witness for the opposing party. *State v. Means,* 797 S.W.2d 517, 518 (Mo. App.1990). Even if Kelly had been called as a witness and had testified adversely to Walden's interests, Walden could not have established the surprise element of the *Byrd* test and, thus, would not have been allowed to impeach Kelly with Stapelton's testimony of Kelly's prior inconsistent statements.

Walden has not proved, under either of his alternative theories, that he was adversely affected by counsel's representation of Kelly. The motion court's findings and conclusions that Walden did not receive ineffective assistance of counsel were not clearly erroneous. Point I is denied.

In Point II, Walden alleges that the trial court plainly erred in admitting testimony into evidence that Walden argues constituted inadmissible hearsay. Walden asserts that the trial court erred when it allowed Piester to testify as to what Craig Walden told him. Piester testified that Craig Walden said Walden was present when Kelly asked Craig Walden to help him sell some jewelry which had come from a Chicago burglary. The testimony at issue is as follows:

Q: Before we get away from the scene, did you learn out at the scene at 801 Moss that Craig had been present during a conversation with Pat Kelly when he was showing the stuff off that had been stolen?

A: I asked Craig—I was trying to get as much information as possible because I knew there was more items. And he said that Patrick Kelly had asked him to sell—try to find some people to sell these items to. And Craig told me that he didn't really know anybody that would buy any of these kinds of items. And so then I asked him if—

oh, he said Patrick Kelly had told him they were taken out of a burglary or a robbery in Chicago.

Q: Did Craig indicate Mr. Walden was present during that conversation?

A: Yes. I asked him specifically this. And I said, "Was your father present, you know, was he there when Patrick told you this?" And he said, "Yes."

Regardless of whether this testimony constitutes hearsay, Walden concedes that counsel did not object to the testimony at trial. As a result, Walden's assertion of error has not been properly preserved for appeal. *State v. Griffin,* 662 S.W.2d 854, 859 (Mo. banc 1983), *cert. denied,* 469 U.S. 873, 105 S.Ct. 224, 83 L.Ed.2d 153 (1984). Walden argues plain error review is warranted because allowing the hearsay testimony into evidence resulted in manifest injustice and a miscarriage of justice. Plain error review is available only when the appellant demonstrates that the trial court's action was erroneous and that such error had such a substantial effect upon the appellant's rights that manifest injustice or a miscarriage of justice would result if the error was not corrected. *State v. Hornbuckle,* 769 S.W.2d 89, 93 (Mo. banc 1989), *cert. denied,* 493 U.S. 860, 110 S.Ct. 171, 107 L.Ed.2d 128 (1989).

The jury is allowed to consider inadmissible hearsay admitted into evidence without objection. *State v. Wallace,* 825 S.W.2d 626, 632 (Mo.App.1992). The admission of hearsay evidence is not plain error if no objection is made at trial to its admission. *State v. Lewis,* 809 S.W.2d 878, 879 (Mo.App. 1991). Additionally, the evidence of Walden's guilt was overwhelming and there was proof of his guilt independent of the hearsay statements. Walden admitted to Piester that he knew the property was stolen; he attempted to hide the watch in his hand when he was first approached by Piester and another law enforcement officer; and he and Kelly hid guns in Craig Walden's house. No manifest injustice or miscarriage of justice resulted from allowing the jury to consider Piester's testimony. Point II is denied.

In Point III, Walden argues the trial court plainly erred in submitting instruction number 4, patterned after MAI–CR3d 302.-04, because it improperly defines reasonable doubt. Walden alleges he was denied his right to due process of law because the instruction, in defining "proof beyond a reasonable doubt" as "proof that leaves you firmly convinced of the defendant's guilt," allowed the jury to find him guilty based on a degree of proof below that required by due process. This alleged error can only be reviewed for plain error because counsel did not object to this instruction at trial.

Even under plain error review, Walden's allegations of instructional error have no merit. Walden compares the Missouri definition of "reasonable doubt" in MAI–CR3d 302.04 to the definition at issue in *Cage v. Louisiana*, 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990), and argues that "firmly convinced" does not satisfy constitutional due process standards. The instruction at issue in *Cage*, was invalidated because the definition of "reasonable doubt" could have been interpreted by a reasonable juror as allowing a finding of guilt based on a degree of proof below that required by the Due Process Clause. *Id.* at 41, 111 S.Ct. at 330. The "reasonable juror" standard of review used in *Cage* was superseded in *Estelle v. McGuire*, — U.S. —, — n. 4, 112 S.Ct. 475, 482 n. 4, 116 L.Ed.2d 385 (1991), by the "reasonable likelihood" standard of *Boyde v. California*, 494 U.S. 370, 380, 110 S.Ct. 1190, 1198, 108 L.Ed.2d 316 (1990), which examines "whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that prevents the consideration of constitutionally relevant evidence."

Walden does not argue the *Estelle* inquiry on review, nor does he advance any theory other than that set forth in *Cage*. The Missouri Supreme Court has repeatedly rejected the argument Walden asserts as to MAI–CR3d 302.04. *State v. Griffin*, 848 S.W.2d 464, 469 (Mo. banc 1993); *Ervin*, 835 S.W.2d at 924; *State v. Blankenship*, 830 S.W.2d 1, 13 (Mo. banc 1992); *State v. Twenter*, 818 S.W.2d 628, 634 (Mo. banc 1991). This court is required to follow the last controlling decision of the Missouri Supreme Court. *State v. Weems*, 800 S.W.2d 54, 58 (Mo.App.1990). Point III is denied.

The conviction and judgment on postconviction motion are affirmed.

All concur.