**STATE of Missouri, Respondent,**

**v.**

**Gary HOPKINS, Appellant.**

**Gary D. HOPKINS, Appellant,**

**v.**

**STATE of Missouri, Respondent.**

**Nos. WD 47544, WD 50023.**

Missouri Court of Appeals,
Western District.

March 26, 1996.

Susan L. Hogan, Appellate Defender, Kansas City, for appellant.

Jeremiah W. (Jay) Nixon, Attorney General, Mary Moulton Bryan, Assistant Attorney General, Jefferson City, for respondent.

Before BRECKENRIDGE, P.J., and ULRICH and LAURA DENVIR STITH, JJ.

BRECKENRIDGE, Presiding Judge.

Gary Hopkins appeals from convictions of two counts of robbery in the first degree, § 569.020, RSMo 1994, and two counts of armed criminal action, § 571.015, RSMo 1994. Mr. Hopkins contends that the trial court erred by submitting a jury instruction which incorrectly defined reasonable doubt. Mr. Hopkins also appeals from the denial, after an evidentiary hearing, of his Rule 29.15 motion for post-conviction relief, claiming that his trial counsel behaved in a rude, sarcastic, and unprofessional manner at trial, and failed to call a witness who would have testified that Mr. Hopkins did not commit the crimes with which he was charged.

The judgments of the trial court and the motion court are affirmed.

At approximately 11:00 p.m. on November 30, 1991, Shelia Page–Bey and Jaelean Wofford went to a jazz club at 18th and Vine in Kansas City, Missouri. After spending about forty-five minutes inside the club, the two women returned to Ms. Page–Bey's automobile. A man, who was later identified as Mr. Hopkins, approached the driver's side door carrying a gun. Mr. Hopkins opened the car door and told Ms. Page–Bey to move over. Ms. Page–Bey did as she was told and Mr. Hopkins began driving the car.

As he drove, Mr. Hopkins instructed the women to put their money and jewelry into one bag, and he told them not to look at him or he would kill them. After ten or fifteen minutes, Mr. Hopkins stopped the car near 24th Street and Garfield and told the women to get out. Mr. Hopkins drove off in the car while the women ran to a nearby house and asked the occupant to call the police.

During the early morning hours of December 2, 1991, police officer Robert Delameter was conducting surveillance near Brush Creek and Paseo when he saw a passing automobile which he recognized as matching the description of the car stolen from Ms. Page–Bey. Officer Delameter alerted another police officer, Mark Johnson, who was driving a marked patrol car. Officer Johnson pursued the vehicle, which collided with a tree after a brief chase. Four men jumped out of the stolen car after the collision, and Officer Johnson recognized the driver of the car as Mr. Hopkins. Mr. Hopkins ran from the scene, but was apprehended on the porch of a nearby house.

Later that morning, Ms. Page–Bey identified Mr. Hopkins from a video lineup. Mr. Hopkins was then interviewed by Sergeant Edward Mulloy, and he told Sergeant Mulloy that he had walked from his stepfather's house to his girlfriend's house when he was apprehended by the police. However, Mr. Hopkins was unable to provide the name of either his stepfather or girlfriend. Mr. Hopkins also told Sergeant Mulloy that he had not taken a car even though Sergeant Mulloy had not yet said anything about a stolen vehicle.

At Mr. Hopkins' trial, he presented an alibi defense, offering the testimony of a number of witnesses who stated that Mr. Hopkins was at a party with them at the time that the charged offenses occurred. At the close of the trial, a jury found Mr. Hopkins guilty of two counts of first-degree robbery and two counts of armed criminal action. As a prior offender, Mr. Hopkins received a twenty-five year sentence on each of the robbery convictions, and a ten-year sentence on each of the armed criminal action convictions, with all the sentences to be served concurrently.

█ In his sole point on direct appeal, Mr. Hopkins claims that the trial court erred by submitting a jury instruction which defined proof beyond a reasonable doubt as proof which leaves one "firmly convinced" of a defendant's guilt. Mr. Hopkins contends that such a definition violated his due process rights because it allowed the jury to convict him based upon an improperly low quantum of proof.

Mr. Hopkins acknowledges that this issue was not properly preserved for appellate review, and he seeks review on the basis of plain error. However, there was no error, plain or otherwise, as the Missouri Supreme Court has consistently rejected identical challenges to the constitutionality of the subject instruction. *State v. Harris,* 870 S.W.2d 798, 811 (Mo. banc 1994); *State v. Shurn,* 866 S.W.2d 447, 462 (Mo. banc 1993); *State v. Ervin,* 835 S.W.2d 905, 924 (Mo. banc 1992).

█ In his point on appeal from the denial of his Rule 29.15 motion for post-conviction relief, Mr. Hopkins claims that his trial counsel behaved in a rude, sarcastic, and unprofessional manner in the presence of the jury, and failed to call a witness who would have testified that Mr. Hopkins did not commit the crimes with which he was charged. Therefore, Mr. Hopkins argues, the motion court clearly erred by rejecting his claims of ineffective assistance of counsel.

Mr. Hopkins points to a number of remarks made by his trial counsel, Robert J. Hiler, which Mr. Hopkins characterizes as unprofessional and prejudicial to his defense. First, after the trial court sustained several objections to his opening statement, Mr. Hiler told the jury:

I guess I can't say anything else, so I will sit down. But I think after you listen to all the evidence you will find this gentleman was not there on the late night of November 30, 1991, or early morning of December 1, 1991. And this is what I want you to do is listen to the evidence very very closely from all the alleged witnesses from the State. Thank you.

Happy?

At the ensuing bench conference, Mr. Hiler explained to the trial court that he just wanted to know if the prosecutor was happy.

During Mr. Hiler's cross-examination of Ms. Page–Bey, the trial court sustained objections to questions regarding her religious affiliation and whether she was with her husband on the night of the robbery. Mr. Hiler then asked:

Q. Are you a human being?

A. (By Ms. Page–Bey) Yes, I am.

MR. HILER: Is that objectionable?

After Mr. Hiler's query, he was admonished by the trial court for making such a remark within the hearing of the jury.

Subsequently, the trial court sustained the State's hearsay objections to Mr. Hiler's cross-examination of Officer Johnson. Mr. Hiler then asked, in front of the jury, "Is there any questions I can ask him, Your Honor?" Later, Mr. Hiler was again admonished by the trial court for making such a comment within the hearing of the jury.

In concluding that Mr. Hiler's behavior did not warrant a finding of ineffective assistance of counsel, the motion court stated that Mr. Hiler's comments

> did not materially prejudice the defendant, nor did they rise to the level of such egregious responses so as to debase the integrity of the trial itself. . . . These comments and responses by Movant's counsel may have even been part of a trial strategy on the part of Mr. Hiler to diminish the credibility of the State's case against the defendant.

■ An appellate court must uphold the motion court's findings of fact and conclusions of law unless they are clearly erroneous. *State v. Khoshaba,* 878 S.W.2d 472, 475 (Mo.App.1994). A motion court's findings and conclusions are clearly erroneous only if, after reviewing the entire record, the appellate court is left with the definite and firm impression that a mistake has been made. *State v. Jones,* 863 S.W.2d 353, 359 (Mo.App. 1993).

■ In order to prevail on a claim of ineffective assistance of counsel, a movant "must show that counsel's overall performance was below established norms and that this incompetence probably affected the outcome of the proceeding." *State v. Lumpkin,* 850 S.W.2d 388, 395 (Mo.App.1993). An appellate court can consider the strength of the evidence of guilt in evaluating any prejudice to a defendant as a result of counsel's alleged ineffectiveness. *State v. Graham,* 906 S.W.2d 771, 786 (Mo.App.1995).

Mr. Hopkins argues that, even if Mr. Hiler's challenged remarks can be attributed to trial strategy, he is entitled to relief because that strategy was not reasonable. However, the reasonableness of isolated remarks by Mr. Hiler is not dispositive of the issue of whether Mr. Hiler's performance was below established norms, as the record establishes that Mr. Hiler's overall representation was competent. On the whole, Mr. Hiler offered a diligent performance on behalf of his client, including a thorough cross-examination of the State's witnesses and the presentation of numerous witnesses to support Mr. Hopkins' alibi defense.

Nor can Mr. Hopkins demonstrate the necessary prejudice to merit relief. In light of Mr. Hiler's overall performance and the strength of the evidence against Mr. Hopkins, this court cannot conclude that Mr. Hiler's challenged remarks probably affected the outcome of the proceeding. *See Goforth v. State,* 775 S.W.2d 231, 233 (Mo.App.1989) (defense counsel's inappropriate demeanor, in altercation with prosecutor, insufficient to establish necessary prejudice in context of entire record).

■ Mr. Hopkins also claims that Mr. Hiler provided ineffective assistance of counsel by failing to call Anthony Taylor as a defense witness. Mr. Taylor was one of the people riding in the stolen car when Mr. Hopkins was apprehended on December 2, 1991. In his Rule 29.15 motion, Mr. Hopkins alleged that Mr. Taylor was present at the courthouse at the beginning of the trial, and that Mr. Taylor was willing to testify that he knew who had committed the robberies and that Mr. Hopkins was not involved.

Mr. Taylor did not appear as a witness at the evidentiary hearing on Mr. Hopkins' Rule 29.15 motion, as he died shortly after the trial. Mr. Hopkins did appear, and testified that, the day before his trial, Mr. Taylor told Mr. Hiler that Mr. Hopkins did not commit the robberies. However, Mr. Hopkins also testified that he was not present when Mr. Taylor talked to Mr. Hiler, and that he did not know what Mr. Taylor had told Mr. Hiler.

Mr. Hiler was not called as a witness at the evidentiary hearing. However, at the sentencing hearing, Mr. Hiler offered the following explanation concerning Mr. Taylor's potential testimony:

[H]e did contact me and he said I know that person that did it, and I said well give me the person's name and address. He said I don't know it. I will try to get it for you. That was just about a day or two before we tried this case. I never got the information.

The motion court refused to find that Mr. Hiler was ineffective on the basis of his failure to call Mr. Taylor as a witness. In its findings and conclusions, the motion court noted that when Mr. Hiler "asked Mr. Taylor for the name of the individual that had allegedly committed the robberies, Mr. Taylor was unable to even provide the name of the party responsible, this being the most basic information that would lend any credibility to Mr. Taylor's story."

■ The motion court was not clearly erroneous in concluding that Mr. Hopkins' allegations concerning Mr. Taylor did not warrant relief. "If counsel reasonably believes a potential witness will not unqualifiedly support his or her client's position, a decision not to call that person as a witness is a reasonable trial strategy choice." *State v. Walden*, 861 S.W.2d 182, 186 (Mo.App.1993).

The judgments of the trial court and the motion court are affirmed.

All concur.