**STATE of Missouri, Respondent,**

v.

**James A. CLARK, Jr., Appellant.**

**Nos. WD 49541, WD 50721.**

Missouri Court of Appeals,
Western District.

April 2, 1996.

Motion for Rehearing and/or Transfer to
Supreme Court Denied May 28, 1996.

Application to Transfer Denied
Aug. 20, 1996.

Rosemary E. Percival, Assistant Appellate Defender, Kansas City, for appellant.

Jeremiah W. (Jay) Nixon, Attorney General, Jill C. LaHue, Assistant Attorney General, Jefferson City, for respondent.

Before SPINDEN, P.J., and BERREY and LAURA DENVIR STITH, JJ.

LAURA DENVIR STITH, Judge.

James A. Clark Jr. was convicted of burglary in the second degree, § 569.160, RSMo 1986, and stealing, § 570.030, RSMo 1986. He was sentenced as a prior and persistent offender to nine years imprisonment on the burglary charge and was sentenced to one year imprisonment and ordered to pay a fine of $1,000 on the stealing charge, with the sentences to run concurrently. He appeals his convictions on the grounds that: (1) the jury verdict form on the stealing conviction varied substantially from the form set out in MAI–CR 3d by permitting the jury to assess the amount of the fine he should pay; and (2) "reasonable doubt" was improperly defined in Instruction No. 4. In addition, Mr. Clark appeals the denial of his Rule 29.15 motion for post-conviction relief, alleging that he was denied effective assistance of counsel by his trial counsel's: (1) failure to object to hearsay testimony, (2) failure to call Mr. Clark's mother to support his alibi, and (3) failure to call an insulation expert to support his argument that the apparent lack of insulation fibers stuck to his clothes at the time of his arrest supported his claim that he had not entered the building in question through a hole in the roof.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Considered in the light most favorable to the verdict, the evidence showed that Mr. Clark picked up Vera Sanders and Ron Buggs during the early hours of June 23, 1993. Announcing that he wanted to do some burglaries, Mr. Clark drove to the Caddyshack Pub, in Kansas City, Missouri. Leaving Ms. Sanders alone in the van, Mr. Clark and Mr. Buggs attempted to enter the pub. After about an hour, Mr. Buggs returned to the van and told Ms. Sanders that Mr. Clark was trying to enter the pub through a hole. Later Mr. Buggs returned to tell Ms. Sanders that Mr. Clark had gotten into the pub through the hole but an alarm was sounding.

After Mr. Buggs got into the van, he and Ms. Sanders pulled out of the pub's parking lot. As they did so, they were stopped by Kansas City, Missouri police officers responding to the alarm at the pub. After questioning both occupants of the van and examining the interior of the van, the officers released Ms. Sanders and Mr. Buggs.

Officer James Schriever, the first officer at the scene, testified at trial that, as he approached the pub, he observed a white male in a blue tee-shirt and jeans climbing the security fence behind the pub. As he went over the fence, the suspect turned and looked at Officer Schriever before running into a wooded area behind the pub. Officer Schriever requested additional officers to surround the wooded area as well as assistance from the police helicopter to help capture the suspect.

Officer Fred Simon, upon reaching the scene, took up a perimeter position to contain the suspect in the wooded area. After doing so, he saw an individual running through the woods. Officer Simon pursued this individual, ordering him to halt. The individual continued to run but looked back at Officer Simon several times. As Officer Simon was chasing this individual, he heard what sounded like a large bag of coins hit the ground and then saw a purple Crown Royal bag with coins and miscellaneous items in it laying on the ground. When Officer Simon was unable to capture the individual, he abandoned his pursuit and returned to collect the items he had seen on the ground. He found approximately $69.00 in coins, $65.00 in cash, two packages of gum and two packages of Eve cigarettes.

Officer David Reynolds, a police helicopter pilot, also tracked the suspect through the wooded area, using sight and a heat sensor. Officer Reynolds was able to direct the officers on the ground to the location of the suspect. Officer Reynolds stated that Mr. Clark was the only person he saw emerge from the wooded area.

Mr. Clark was apprehended as he came out of the wooded area. He appeared very tired, was sweaty and dirty and was breathing heavily. Officers Simon and Schriever both identified Mr. Clark as the suspect they had seen earlier. Mr. Clark's clothing and gloves were retained by the police as evidence. In addition, the police discovered steel snips, a ballpeen hammer and a small crowbar along the path of the chase through the wooded area.

Entry to the pub had been made through a hole in the roof. Insulation material, wood from the roofing and tar paper were scattered on the floor under the hole and on the pub's roof. Two pool tables, two video games and a juke box had been vandalized and the money removed. Coins had been taken from the cash register. The business office in the pub had been ransacked and cash, upon which personal notes had been written to the pub's owner, had been taken from a desk in the office. The pub manager identified the cash, coins, cigarettes and gum found by Officer Simon in the woods as items missing from the pub.

At trial, Mr. Clark's mother-in-law testified that she woke Mr. Clark, who was living in her house at the time, at 4:00 a.m. that morning so that he could pick up someone to help him lay carpet. In addition, a forensic chemist from the Regional Crime Lab testified that she examined the clothing worn by Mr. Clark and had been unable to locate any insulation fibers or wood splinters on the clothing.

The jury found Mr. Clark to be guilty of both charges and recommended a sentence of

one year and a fine of $1,000 on the stealing charge. The trial court sentenced Mr. Clark to nine years imprisonment for the burglary charge and one year on the stealing charge, ordering both sentences to run concurrently. The court also ordered a fine of $1,000 on the stealing charge, rejecting defense counsel's request that imposition of the fine be waived.

A motion for new trial, generally alleging error in the verdict form for the stealing charge because it varied from MAI–CR 3d 304.40, was overruled by the trial court. Mr. Clark filed a post-conviction motion pursuant to Rule 29.15 alleging ineffective assistance of counsel. Following an evidentiary hearing, the court denied Mr. Clark's motion for post-conviction relief. This appeal followed.

## II. *THE USE OF AN IMPROPER JURY VERDICT FORM DID NOT PREJUDICE MR. CLARK*

Mr. Clark alleges that the use of Verdict Form "C" was prejudicial in that the form varied substantially from MAI–CR 3d 304.40 by instructing the jury that it could assess as punishment on the stealing charge, a "period of time, but not more than one year in the county jail and/or a fine, *not to exceed $1,000*" (emphasis added). The jury recommended one year in jail and a fine of $1,000.

The State concedes that the trial court erred in submitting an instruction which asked the jury to assess the amount of the fine. Rather, under MAI–CR 3d 304.40, the verdict form should have simply asked the jury whether a fine should be imposed, in addition to the prison sentence, with "the amount to be determined by the Court." MAI–CR 3d 304.40. The State suggests, however, that no prejudice resulted from the jury's recommendation and therefore Mr. Clark is not entitled to a new trial.

In determining whether prejudice occurred, we note that failure to follow MAI–CR 3d approved instructions does not automatically require reversal. Rather, the prejudicial effect of giving an instruction which does not comply with MAI–CR 3d is to be judicially determined. *State v. Livingston,* 801 S.W.2d 344, 348 (Mo. banc 1990). Unless this Court finds that the error was prejudi-cial, we will not remand for a new trial. *State v. Green,* 812 S.W.2d 779, 786 (Mo.App. 1991).

Moreover, here, Defendant did *not* object to the instruction prior to submission, although in his Motion for New Trial, he did generally raise the issue that the instruction varied from the approved MAI–CR 3d form. At the time this case was tried, raising this issue in his Motion for New Trial was sufficient to preserve it for appeal. Nonetheless, the cases are clear that a failure to object before submission is a factor we can properly consider in determining whether reversible error occurred. *Livingston,* 801 S.W.2d at 348.

We find that no such reversible error occurred. In an attempt to show prejudice, Defendant speculates in his brief that, if the jury had not recommended the amount of the fine, the court "would have been willing to waive the fine or impose a lesser fine." To the contrary, the record of the sentencing hearing demonstrates that defense counsel never even requested the court to set a fine less than $1,000, the amount recommended by the jury. Indeed, he never even suggested to the judge that the judge should not consider the jury's recommendation because the jury should not have been asked to recommend the amount of the fine. Rather, counsel simply asked to be reminded what the jury had recommended as a fine, and then he asked the judge to waive the imposition of *any* fine at all. The judge refused to do so, stating in part that "I will not waive the fine. That's what the jury decided in that Count."

The judge's comments at sentencing made it clear that he was well aware that he had the discretion to waive the fine; he simply chose not to do so because he wanted to follow the jury's recommendation that a fine be imposed. Even had the jury been correctly instructed, however, the jury would have been asked to state whether it believed that a fine should be imposed. The court then would have considered the jury's recommendation in determining whether to impose a fine and in what amount. *See State v. Rogers,* 651 S.W.2d 591 (Mo.App.1983); *State v. Quick,* 639 S.W.2d 880, 883 (Mo.App.1982).

That is just what happened here. There is nothing to suggest that the court's decision to impose a fine at all was influenced by the jury's recommendation as to the amount of the fine. Rather, the trial court simply properly considered the jury's recommendation of a fine in determining not to grant defense counsel's request to waive the fine altogether. This Point is denied.

### III. THE DEFINITION OF REASONABLE DOUBT DID NOT VIOLATE MR. CLARK'S CONSTITUTIONAL RIGHTS

■ Mr. Clark also claims that the definition of "reasonable doubt" used in Instruction No. 4, patterned after MAI–CR 3d 302.04, violated his constitutional rights by defining "proof beyond a reasonable doubt" as proof that leaves one "firmly convinced" of the defendant's guilt. He argues that the instruction thus permitted the jury to convict him on a "quantum of proof that is less than 'proof beyond a reasonable doubt.'"

The identical challenge to the definition of "reasonable doubt" has been consistently and repeatedly rejected by the Missouri Supreme Court. See State v. Ervin, 835 S.W.2d 905, 924 (Mo. banc 1992), cert. denied, 507 U.S. 954, 113 S.Ct. 1368, 122 L.Ed.2d 746 (1993); State v. Waller, 816 S.W.2d 212, 218 (Mo. banc 1991). Each of these cases holds that the "firmly convinced" language utilized in defining "reasonable doubt" in MAI–CR 3d 302.04 is constitutionally sound. Furthermore, the Missouri Supreme Court has held that such jury instructions conform with the decision of the United States Supreme Court in Cage v. Louisiana, 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990), in that they merely explain "reasonable doubt" to the jury and clearly require that the jury find the defendant guilty beyond a reasonable doubt. This Point is denied.

### IV. MR. CLARK DID NOT RECEIVE INEFFECTIVE ASSISTANCE OF COUNSEL

Mr. Clark filed a motion for post-conviction relief pursuant to Rule 29.15. This motion alleged that Mr. Clark was denied effective assistance of counsel because: (1) trial counsel failed to call Mr. Clark's mother to testify as a defense witness; (2) trial counsel failed to call an insulation expert to testify in Mr. Clark's defense; and (3) trial counsel failed to object to the hearsay testimony of Ms. Sanders that Mr. Buggs came back to the van and told her that Mr. Clark was trying to get inside the pub through a hole in the roof, that Mr. Clark got through the hole, and that an alarm was going off. The trial court denied this motion. Mr. Clark's appeal from this denial was consolidated with the appeal of his criminal conviction.

### A. Standard of Review.

■ Appellate review of the motion court's decision denying a Rule 29.15 motion alleging ineffective assistance of counsel is limited to a determination of whether the findings and conclusions of the motion court are clearly erroneous. Rule 29.15(j). Such findings and conclusions are deemed clearly erroneous only if, after reviewing the entire record, this Court is left with the definite and firm impression that a mistake has been made. Sanders v. State, 738 S.W.2d 856, 857 (Mo. banc 1987).

■ To prove a claim of ineffective assistance of counsel, Mr. Clark was required to show by a preponderance of the evidence that his attorney failed to exercise the customary skill and diligence that a reasonably competent attorney would have exhibited under similar circumstances. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); Sanders, 738 S.W.2d at 857. There is a strong presumption that his counsel's conduct falls within the wide range of reasonable professional assistance and trial strategy. State v. Harris, 870 S.W.2d 798, 814 (Mo. banc), cert. denied, — U.S. —, 115 S.Ct. 371, 130 L.Ed.2d 323 (1994); Bevly v. State, 778 S.W.2d 297, 298 (Mo.App.1989).

■ If his counsel's conduct is found to be deficient, then Mr. Clark must additionally affirmatively prove that he was prejudiced as a result of his counsel's actions. Strickland, 466 U.S. at 693–94, 104 S.Ct. at 2067–68. As the Court of Appeals explained in Bevly:

The fact that an error by counsel might have had some conceivable effect on the outcome is not sufficient. Rather, movant, when challenging a conviction, must show there is a reasonable probability that, absent the alleged error, the fact finder would have had a reasonable doubt respecting guilt.

*Bevly*, 778 S.W.2d at 298–99. The court must consider the totality of the evidence in determining whether a reasonable probability exists. *Id.* at 299.

### B. *Failure to Call Defendant's Mother and an Insulation Expert as Witnesses.*

Mr. Clark alleges his trial counsel was ineffective for failing to call his mother to support his alibi defense and for failing to call an insulation expert to testify that insulation fibers, possibly invisible to the naked eye, would have stayed on his clothes if he had gone in the building through the hole in the roof as alleged by the State.

■ To demonstrate that defense counsel was ineffective for failing to call a witness to testify, the movant must prove that: (1) the decision not to call the witness was something other than reasonable trial strategy; (2) the witness could have been located through reasonable investigation and would have testified if called; and (3) the witness' testimony would have provided movant with a viable defense. *State v. Walden*, 861 S.W.2d 182, 186 (Mo.App.1993). A decision not to call witnesses to testify as a matter of trial strategy is virtually unchallengeable. *State v. Ash*, 840 S.W.2d 304, 306 (Mo.App. 1992). Unless Defendant proves otherwise, the decision not to call a witness is presumed to be a matter of trial strategy. *Walden*, 861 S.W.2d at 186.

■ Here, Defendant offered no evidence that the failure to call his mother to testify and the failure to call an insulation expert were anything other than trial strategy. Mr. Clark's mother, Wanda Ray, testified at the post-conviction motion hearing that Defendant brought his daughter to her home and did not leave her home until between 4:30 and 4:45 on the morning of the burglary. The burglary occurred at approximately 5:00

a.m., leaving Mr. Clark little time to burglarize the pub as alleged by other witnesses. Defendant's mother also stated that she had been willing and able to testify on Mr. Clark's behalf. Defendant's trial counsel acknowledged that Mr. Clark had provided her with information as to how to contact his mother, but she did not recall speaking with his mother. Counsel also stated, however, that she believed the mother's testimony was not necessary, even though it would have helped establish a time frame for the morning at issue and could have been used to further impeach Ms. Sanders' testimony.

The motion court held that the testimony of Defendant's mother was virtually the same as the testimony which trial counsel did present from Mr. Clark's mother-in-law, who stated that she woke Mr. Clark at 4:00 a.m. Moreover, the mother-in-law's testimony was less subject to attack based on bias. The court therefore found the decision not to call Defendant's mother was reasonable trial strategy. This determination was not clearly erroneous.

■ Defendant also alleges counsel was ineffective in failing to call an expert insulation witness at trial. At the post-conviction hearing, Defendant called James Banks, an owner of an insulation company. Mr. Banks identified the insulation from the pub as fiberglass insulation. Mr. Banks testified that if Mr. Clark had entered the pub through a hole in the roof, insulation fibers would have clung to his clothing and skin and would have remained even after a half hour chase through the woods. He further stated that not all fiberglass fibers would be visible to the naked eye but they could be discovered through formal testing. No such testing apparently occurred.

Trial counsel indicated that she had spoken with an insulation installer prior to trial. She admitted that she did not know whether the jurors had experience with insulation or would know the tendency of insulation fibers to stick to clothing, but nonetheless said she felt that the use of an expert would not be appropriate in this situation. However, evidence was presented by a forensic chemist from the Regional Crime Lab which estab-

lished that no insulation could be seen on Mr. Clark's clothing.

We agree with the motion court that the insulation expert's testimony would have added little new information and that none of it would have been determinative. Indeed, as no one tested Mr. Clark's clothing for the presence of invisible fibers and as the forensic chemist who testified at trial said that no visible fibers were found, Mr. Banks' testimony would only have been of minor relevance. In any event, whether such expert testimony was needed was clearly a matter of trial strategy and does not support a claim of ineffective assistance of counsel.

### C. *Failure to Object to Hearsay Evidence.*

Finally, Mr. Clark claims that he was denied effective assistance of counsel because his trial counsel failed to object to hearsay testimony by Vera Sanders that Ron Buggs told her that Mr. Clark had entered the Caddyshack Pub. Specifically, Ms. Sanders testified as follows:

Ms. Mahoney: Where did you go then?

Ms. Sanders: To a restaurant called the Caddyshack.

Ms. Mahoney: Okay. And what did you do when you got there?

Ms. Sanders: I sat in the van. James Clark got out of the van and went into the place and I sat there and waited for about an hour because he was in there for a long time and I was wondering what he was doing. Ron came back to the van and I was saying what is he doing in there doing so long? He said he's trying to get in through a hole.

. . . .

Ms. Mahoney: Okay. And then what happened after you said you waited for a while?

Ms. Sanders: After I sat there and waited for a while Ron came back and said that he was trying to get through and he said he got through and said that an alarm was going off.

▓▓▓ The State first suggests that this evidence was not objectionable hearsay but rather was a statement of a conspirator made in furtherance of the conspiracy, citing *State v. Leisure,* 838 S.W.2d 49 (Mo.App.1992). However, statements of one conspirator are not admissible against another under the co-conspirator exception to the hearsay rule unless the State first shows the existence of a conspiracy by evidence independent of the statement. *Leisure,* 838 S.W.2d at 56. The State has not identified any independent evidence of a conspiracy in this case to support the admission of these hearsay statements. In addition, even if a conspiracy had been shown, the State does not show how these statements could be considered to have furthered the conspiracy. Consequently, having been offered no basis for the admission of this hearsay testimony, we conclude that an objection would have been meritorious.

▓▓▓ The State alternatively claims that, even if this evidence was objectionable as hearsay, defense counsel's single failure to object to its admission did not constitute ineffective assistance of counsel. The motion court agreed, finding that counsel's failure to object to this line of questioning was simply trial strategy. At the evidentiary hearing, Mr. Clark's trial counsel testified that she had not objected to the hearsay statement "because [she] either didn't hear it or wasn't thinking." Counsel did testify that her defense strategy was to demonstrate that Mr. Clark was not involved in the burglary but was merely in the wrong place at the wrong time. In addition, counsel hoped to demonstrate that Ms. Sanders' testimony about the burglary made no sense. However, trial counsel did not testify that her failure to object was in furtherance of this strategy. We do not see any way, in view of the record, to attribute the failure to object to trial strategy.

▓▓▓ However, the mere fact that a meritorious objection was not made does not constitute ineffective assistance. Rather, there must be a showing that counsel's *overall* performance fell short of established norms and that this incompetence affected the result. This requires a showing that, but for this error, a different result would have been

obtained.[1] Otherwise, the failure to object simply constitutes a procedural default, precluding appellate or collateral relief. *State v. Suarez*, 867 S.W.2d 583, 587–88 (Mo.App. 1993); *State v. Lumpkin*, 850 S.W.2d 388, 395 (Mo.App.1993).

We find these cases applicable here. While counsel failed to object to the hearsay statements, the statements were a small part of a lengthy trial. They were not emphasized or referred to on other occasions. Moreover, trial counsel was able to negate the effect of this testimony by discrediting the witness who repeated it on the stand. For this reason, and in light of the other evidence placing Defendant at the scene and showing him fleeing from the scene, as well as the other evidence circumstantially connecting him with the stolen goods, we do not find that Mr. Clark met his burden of showing that there is a "reasonable probability that, absent the alleged error, the fact finder would have had a reasonable doubt respecting guilt." *Bevly*, 778 S.W.2d at 298–99.

For these reasons, Mr. Clark's convictions and denial of his motion for post-conviction relief are affirmed.

All concur.

---

1. *See, e.g., State v. Vivone*, 857 S.W.2d 489, 494–95 (Mo.App.1993)(no prejudice resulted from failure to object because damaging testimony was cumulative of other evidence before the jury and furthermore, "[i]f the testimony ... which is complained of here were completely eliminated from the record, there would still be evidence making a strong case" of the defendant's guilt); *State v. McVay*, 852 S.W.2d 408, 415 (Mo.App. 1993) (evidence of appellant's guilt was so overwhelming that even absent the alleged error, the resulting verdict would have been the same); *State v. Durbin*, 835 S.W.2d 323, 326 (Mo.App. 1992) ("[a]lthough counsel should have objected to the prosecutor's remarks, we find no basis to conclude that absent counsel's failure to object the jury would have had a reasonable doubt respecting defendant's guilt").