STATE of Missouri, Respondent,

v.

Darryl S. COLBERT, Appellant.

Nos. WD 51114, WD 53325.

Missouri Court of Appeals,
Western District.

Aug. 19, 1997.

Jeannie A. Willibey, Assistant Public Defender, Kansas City, for Appellant.

Philip M. Koppe, Assistant Attorney General, Kansas City, for Respondent.

Before EDWIN H. SMITH, P.J., and BERREY and ELLIS, JJ.

EDWIN H. SMITH, Presiding Judge.

Darryl S. Colbert was convicted on January 25, 1995, by jury in the Circuit Court of Jackson County of one count each of forcible rape, § 566.030.1 RSMo Supp.1993 [1], kidnapping, § 565.110, and robbery in the first degree, § 569.020. On April 21, 1995, he was sentenced to life imprisonment for forcible rape, fifteen years imprisonment for kidnapping and thirty years imprisonment for first-degree robbery, all three sentences to run consecutively. Appellant appeals his convictions and sentences and the denial of his Rule 29.15 motion for postconviction relief without an evidentiary hearing. His appeals have been consolidated pursuant to Rule 29.15(l).

In appealing the denial of his Rule 29.15 motion without an evidentiary hearing, appellant in Point I alleges that he received ineffective assistance of counsel in that his trial counsel failed to: (1) object to hearsay statements; (2) adequately prepare for trial; (3) object to inadmissible evidence; (4) conduct a proper voir dire and challenge the State's peremptory strikes removing prospective African–American jurors; (5) timely seek withdrawal from the case; (6) adequately challenge DNA evidence in the case with a defense expert or through cross-examination; and (7) advise him of the State's first plea offer. On direct appeal, appellant alleges in Point II that the trial court erred in failing to exclude from evidence *sua sponte* statements appellant made to the police after requesting the assistance of counsel.

We reverse and remand in part and affirm in part.

## Facts

The evidence, which we review in the light most favorable to the verdict, *State v. Storey*, 901 S.W.2d 886, 891 (Mo. banc 1995), reveals the following:

Around 9:00 p.m., on January 26, 1994, L.P. was getting out of her car in front of her home when she was confronted by a man she later identified as appellant, Darryl S. Colbert. He told her not to scream or he would shoot her. Appellant told L.P. to get back into the car, and he drove away from her house. While appellant was driving, he ordered L.P. to give him the money she had and her wedding ring. He stopped the car on a dead-end street, raped L.P. and told her to get dressed while he drove. He told her that if she told the police he would kill her. Appellant stopped the car again, got out and told her to drive away. When L.P. returned to her home, she told her husband what had happened. He called the police, who transported her to a hospital emergency room for a physical examination. Cervical specimens and fluid samples were taken at that time.

That night, Detective Jan Wallace, of the Kansas City Police Department's Sex Crimes Unit, learned of a surveillance videotape from a gas station in which an individual matching the description of L.P.'s assailant appeared. Detective Wallace then discovered that the man in the surveillance tape matched the description of an individual who had recently been arrested and was in detention at police headquarters. Detective Wallace notified appellant that he was a possible suspect in a rape investigation. When told that he would appear in a lineup, he requested an attorney, at which time Wallace told him that he would not be questioned. L.P. identified appellant as the individual who abducted and raped her.

After the lineup, Wallace and another officer escorted the participants, including

1. All statutory references are to RSMo 1994, unless otherwise noted.

appellant, back to the holding area. Overhearing Detective Wallace discuss the surveillance videotape with the other officer, appellant asked about the videotape, and Detective Wallace replied that she could not discuss it with him because he had requested an attorney. At that point, appellant said that he did want to waive his right to an attorney and signed a *Miranda*-waiver form. After viewing the videotape, appellant eventually admitted that he had been in the gas station on January 26, 1994, the date of the rape. Later, Detective Wallace indicated to appellant that she would be leaving for the night, and asked appellant if he wanted to talk again. Appellant agreed, and Detective Wallace read his *Miranda* rights. He stated, "I did it," and proceeded to relate a number of details that corroborated L.P.'s story. Appellant then signed his written statement.

On February 18, 1994, the State charged appellant by indictment in the Jackson County Circuit Court with one count of forcible rape, one count of kidnapping and one count of first-degree robbery. Appellant filed a motion to suppress before trial with respect to all statements made to the police, which the trial court denied after a hearing. The trial court also overruled appellant's motion for acquittal at the close of all of the evidence. After closing arguments, the jury returned verdicts of guilty on all three counts on January 25, 1995. On April 21, 1995, the trial court overruled appellant's motion for new trial and sentenced him to life imprisonment for forcible rape, fifteen years imprisonment for kidnapping and thirty years imprisonment for first-degree robbery, all to run consecutively.

Appellant filed a timely *pro se* Rule 29.15 motion, which was amended by appointed counsel. On March 3, 1996, the motion court granted appellant an evidentiary hearing with respect to one of his allegations of error, an issue appellant later waived. On July 17, 1996, the motion court entered its findings of fact and conclusions of law denying the remaining claims without an evidentiary hearing. This appeal followed.

## I. Rule 29.15 Appeal

### Standard of Review

Appellate review of the motion court's denial of a postconviction relief motion is not a *de novo* review; rather, the findings of fact and conclusions of law of the motion court are presumptively correct. *Wilson v. State,* 813 S.W.2d 833, 835 (Mo. banc 1991). Review of a motion court's actions is limited to a determination of whether the trial court's findings and conclusions are clearly erroneous. Rule 29.15; *State v. Driver,* 912 S.W.2d 52, 54 (Mo. banc 1995). Findings and conclusions are deemed clearly erroneous only if, after reviewing the entire record, we are left with the definite and firm impression that a mistake has been made. *Wilson,* 813 S.W.2d at 835.

### Discussion

In his first point, appellant claims that the trial court erred in denying his Rule 29.15 motion without an evidentiary hearing. In his motion, he alleged that he received ineffective assistance of counsel in that his trial counsel failed to: (1) object to hearsay statements; (2) adequately prepare for trial; (3) object to inadmissible evidence; (4) conduct a proper voir dire and challenge the State's peremptory strikes removing prospective African–American jurors; (5) timely seek withdrawal from the case; (6) adequately challenge DNA evidence in the case with a defense expert or through cross-examination; and (7) advise him of the State's first plea offer.

As a preliminary matter, we note that appellant's Point I does not comply with the Rule 30.06(d) requirement that the point should "briefly and concisely" state what actions or rulings of the court are sought to be reviewed. As the State correctly observes, appellant's four-page Point I is neither brief nor concise, and does little more than restate his allegations already ruled on by the motion court. An insufficient point relied on under Rule 30.06 preserves nothing for review. *State v. Nenninger,* 872 S.W.2d 589 (Mo.App.1994), *cert. denied,* 513 U.S. 1022, 115 S.Ct. 589, 130 L.Ed.2d 503 (1994). Although a motion for postconviction relief is

denominated a civil action, the underlying issues involved are criminal. In criminal cases "when appellant's arguments make clear the grounds for alleged error, it is preferable to decide cases on the merits to avoid punishing appellant for the shortcomings of appellate counsel." *State v. Rehberg*, 919 S.W.2d 543, 548 (Mo.App.1995), citing *State v. Sloan*, 756 S.W.2d 503, 505 (Mo. banc 1988), *cert. denied*, 489 U.S. 1040, 109 S.Ct. 1174, 103 L.Ed.2d 236 (1989); *State v. Tivis*, 884 S.W.2d 28, 29 (Mo.App.1994). Thus, we will exercise our discretion and review the claims raised in appellant's Point I.

To prove ineffective assistance of counsel, the movant must show that: (1) trial counsel did not demonstrate the customary skill and diligence that a reasonably competent attorney would display rendering similar services under the existing circumstances; and that (2) he or she was prejudiced by such conduct or lack thereof. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). To demonstrate prejudice, the movant must show a reasonable probability that, but for his attorney's unprofessional errors, the result of the proceeding would have been different. *State v. Harris*, 870 S.W.2d 798, 814 (Mo. banc 1994), *cert. denied*, 513 U.S. 953, 115 S.Ct. 371, 130 L.Ed.2d 323 (1994).

> Movant faces a heavy burden in establishing a claim for ineffective assistance of counsel. Not only must the defendant prove his or her allegations by a preponderance of the evidence, but the defendant must overcome the court's presumption that counsel is competent.

*Yoakum v. State*, 849 S.W.2d 685, 687 (Mo. App.1993) (citations omitted). Reasonable trial strategy will not support an ineffective assistance of counsel claim. *Harris*, 870 S.W.2d at 814. To be entitled to an evidentiary hearing on a motion for postconviction relief for ineffective assistance of counsel: (1) a movant must allege facts, not conclusions, which, if true, would warrant relief; (2) the facts must raise matters not refuted by the record; and (3) the matters complained of must have resulted in prejudice to the movant. *Driver*, 912 S.W.2d at 55.

To aid our discussion, we have grouped appellant's grounds for ineffective assistance of counsel together, as follows: (A) failure to object to hearsay and other inadmissible evidence, sub-points (A) and (C); (B) failure to prepare for trial, sub-point (B); (C) failure to properly conduct the voir dire examination of the jury and challenge the dismissal of prospective jurors, sub-point (D); (D) failure to seek timely withdrawal and to either hire an expert or adequately cross-examine the State's expert on the issue of DNA evidence, sub-points (E) and (F); and (F) failure to advise appellant of the State's first plea offer, sub-point (G). We will address each group separately.

### A. Failure to Object to Inadmissible Evidence

Appellant first alleges that his trial counsel was ineffective for failing to object to: (1) hearsay testimony from Detective Wallace regarding the time period and date of the surveillance videotape because it conflicted with his alibi; (2) evidence that appellant used an alias when arrested for a traffic violation on January 27, 1994; (3) testimony from the State's DNA expert that he had previously appeared in court to obtain appellant's blood for DNA testing; (4) L.P.'s rape kit and clothing from the night of the rape; (5) testimony from L.P. that she thought she would be killed; (6) a reference in the State's closing argument to L.P.'s statement that she thought she might be killed; (7) a reference in the State's closing argument that this particular kidnapping deserves the maximum punishment; and (8) his statements to Detective Wallace. The standard for considering a claim of ineffective assistance of counsel claim based on the failure to object is stated succinctly in *State v. Radley*, 904 S.W.2d 520, 525 (Mo.App.1995), as follows:

> "Decisions concerning whether or when to make objections at trial are left to the judgment of counsel." *State v. Suarez*, 867 S.W.2d 583, 587 (Mo.App.1993). "Ineffective assistance of counsel is not to be determined by a post-trial academic determination that counsel could have successfully objected to evidence in a given number of instances." *Id.* "The failure to object to

objectionable evidence does not establish ineffective assistance of counsel unless the evidence resulted in a substantial deprivation of the accused [sic] right to a fair trial." *Id.* "Counsel's failure to object to particular evidence can constitute mere 'trial error' not arising to constitutional proportions and thus not cognizable in a post-conviction motion." *Id.* "An appellate court will not permit motion counsel to convert unpreserved error into viable error by arguing incompetence." *Id.*

Even assuming, *arguendo*, that appellant's trial counsel did fail to make a meritorious objection as to certain evidence as alleged, appellant has not necessarily made a sufficient showing of ineffective assistance of counsel. Because movant has the burden to show that trial counsel's overall performance fell short of established norms, he must allege and prove that but for the errors, a different result would have been obtained. *State v. Clark*, 925 S.W.2d 872, 879–80 (Mo. App.1996).

Here, the overwhelming evidence of appellant's guilt makes it reasonable for us to conclude that even if the evidence to which appellant complains had been excluded, the outcome of the trial would not have been different. The evidence indicating appellant's guilt includes his confession, the surveillance videotape placing him near the scene of the rape and L.P.'s identification of appellant as her attacker. Thus, the record would conclusively refute any claim of ineffective assistance of counsel for trial counsel's failure to object in that prejudice could not be shown. *Id.* Nonetheless, we will discuss each claim of failed objection individually.

■ Appellant first assigns error to his trial counsel's failure to object to hearsay testimony of Detective Wallace concerning the time period and date of the surveillance videotape. Without objection, Detective Wallace testified on direct examination that she had discussed appellant's presence in the gas station the night of January 26, 1994, with the clerk, Michael Shoates, who was not called as a witness. She later testified on cross-examination, over the objection of appellant's trial counsel, that Michael Shoates

had told her the video was from approximately 9:00 p.m. on January 26, 1994. Appellant's trial counsel objected again when, in the State's rebuttal, Detective Wallace testified that her information concerning the time appellant was in the gas station came from Michael Shoates.

■ While Detective Wallace's testimony was hearsay, it does not constitute a basis for postconviction relief. It is reasonable for us to conclude from the record that appellant did not initially object to Detective Wallace's testimony as a matter of trial strategy in order to show that appellant was at the gas station at roughly the same time the rape took place, thus corroborating appellant's alibi defense. As stated *supra*, decisions concerning trial strategy will not support a claim of ineffective assistance of counsel. *Harris*, 870 S.W.2d at 814. Further, "a defendant cannot complain about matters that he himself brings into the case." *Radley*, 904 S.W.2d at 523.

■ Appellant next alleges that his trial counsel failed to object to evidence that appellant used an alias when arrested for a traffic violation on January 27, 1994. Even assuming, *arguendo*, the admission of this evidence without objection did amount to ineffective assistance of counsel, we hold that it had no impact on the result in this case and was therefore not prejudicial. It is unreasonable to infer that but for the admission of this evidence, appellant would not have been found guilty. *Clark*, 925 S.W.2d at 879–80.

■ Appellant next alleges that his trial counsel failed to object to testimony from the State's DNA expert that he had previously appeared in court to obtain appellant's blood for testing. This testimony was admissible because the record reflects that the State was attempting to clarify statements that its DNA expert made during cross-examination as to when he had received appellant's blood sample. Because this testimony was a proper response to the suggestion by appellant's trial counsel that the State's expert had improperly delayed testing, we cannot convict his trial counsel for failure to object to this testimony. *State v. Clark*, 913 S.W.2d 399, 406 (Mo.App.1996).

Appellant next alleges that his trial counsel failed to object to the introduction of L.P.'s rape kit and clothing from the night of the rape, Exhibit 7. He argues that the exhibit lacked a proper foundation, a sufficient chain of custody and was hearsay. Based on the record, we find that there was a sufficient foundation for the trial court to be "satisfied not only of the identity of the articles, but also that they were in the same condition when tested as when originally obtained." *State v. North*, 941 S.W.2d 16, 19 (Mo.App. 1997). The State's DNA expert testified that he received the contents of Exhibit 7 in a sealed bag, immediately removed and tested them, returned the contents and resealed the bag. This evidence provides a "reasonable assurance" that the contents had not been tampered with, contaminated or substituted. *Id.*

As is foundation evidence, chain of custody evidence is to provide "reasonable assurance that the exhibit offered is the same evidence seized and is in substantially the same condition as when seized ... [and] the evidence seized has not been tampered with or substituted." *State v. Davenport*, 924 S.W.2d 6, 9 (Mo.App.1996). The sufficiency of the evidence establishing a chain of custody is a matter within the sound discretion of the trial court. *Id.* Here, the testimony on the chain of custody was sufficient to provide reasonable assurance that the evidence admitted was, in fact, L.P.'s rape kit and her clothing from the night of the rape. L.P. testified that at the hospital that night, she placed her clothing in a plastic bag. The doctor who examined L.P. at the hospital testified that he added L.P.'s laboratory specimen slides to the rape kit. He also stated that the hospital practice is for the nurse to seal the bag and keep it at the hospital until the police crime lab picks it up. Finally, the State's DNA expert, from the police crime lab, testified that he received and tested a sealed rape kit listed under L.P.'s name, the same kit the State presented in evidence at trial. Thus, these facts are more than sufficient to establish a chain of custody for Exhibit 7.

We do not find it necessary to address appellant's claim that the contents of Exhibit 7 constituted inadmissible hearsay, as appellant does not direct us to the portion of the record containing the hearsay to which he refers. *Driver*, 912 S.W.2d at 55. Therefore, the appellant does not demonstrate and the record does not reflect that appellant's trial counsel was ineffective for failing to object to inadmissible evidence.

Appellant next claims that his trial counsel was ineffective for failing to object to testimony from L.P. that she thought she would be killed, and the State's reference to this statement in its closing argument. We find L.P.'s statement was admissible to establish "forcible compulsion," an element of all three of the offenses with which appellant was charged. *See, e.g., State v. Carnes*, 945 S.W.2d 594, 597 (Mo.App.1997) (stating that evidence of a separate crime is admissible if it establishes an element of the crime in question). Because this evidence was admissible, appellant's trial counsel was not ineffective for failing to object to its admission. *Clark*, 913 S.W.2d at 406. This being the case, we also find that appellant's trial counsel was not deficient for failing to object to the State's reference to L.P.'s testimony in its closing argument, as it is permissible to refer to all admissible evidence during closing argument. *State v. Haslar*, 887 S.W.2d 610, 617 (Mo.App.1994).

Appellant next claims his trial counsel failed to object to a statement in the State's closing argument that this particular kidnapping deserves the maximum punishment. "The trial court is given broad discretion to control closing argument." *Id.* The prosecutor has wide latitude in argument, and may "argue that a defendant is deserving of a heavy punishment so long as defense counsel has an opportunity to reply, and argue to the contrary." *State v. Sielfleisch*, 884 S.W.2d 422, 430 (Mo.App.1994). As the complained-of argument here was a legitimate appeal to the jury, and appellant's trial counsel had the opportunity to argue to the contrary in his closing argument, *id.*, appellant's trial counsel was not ineffective for failing to object.

Finally, appellant alleges that all of his statements to Detective Wallace were inad-

missible because he had not been properly *Mirandized*. He alleges that his trial counsel was ineffective for failing to object to their admission at trial. As more fully discussed in Point II, *infra*, we find that appellant's statements to Detective Wallace were admissible. Thus, appellant's trial counsel cannot be held to be ineffective for failing to object to admissible evidence. *State v. Berry*, 798 S.W.2d 491, 497 (Mo.App.1990).

### B. Failure to Adequately Prepare for Trial

In sub-point B of his Point I, appellant alleges that his trial counsel failed to "adequately prepare for trial," which resulted in the following claimed trial errors: (1) trial counsel elicited and opened the door to prejudicial testimony from appellant, appellant's girlfriend, L.P.'s husband and Detective Wallace; and (2) improperly prepared alibi instructions. In order to show ineffective assistance of counsel based on the failure to adequately prepare for trial, movant must allege: (1) the specific information trial counsel did not discover before trial; (2) that the information would have been discovered by reasonable investigation; and (3) that the undiscovered information would have provided appellant with a viable defense. *State v. Roberts*, 873 S.W.2d 638, 643 (Mo.App.1994). We disagree.

Appellant alleges that his trial counsel was ineffective because he either elicited or allowed the State to elicit the following prejudicial evidence: (1) that appellant had prior municipal court convictions and personal knowledge about the bonding procedures after a person is arrested; (2) that L.P.'s husband received an obscene telephone call shortly after L.P. was raped; (3) that appellant was being investigated for an unrelated rape charge; (4) that appellant's girlfriend was in possession of stolen license plates; (5) that the victim of another rape and kidnapping viewed the lineup in which appellant participated; and (6) that appellant sold his blood and pawned his son's video game set to get money for drugs. Although appellant couches his allegations of failed trial preparation in terms of his trial counsel's "failure to investigate," all of these alle-

gations involve issues of presentation of evidence, which is a matter of trial strategy. *State v. Taylor*, 779 S.W.2d 636, 645 (Mo. App.1989).

> Counsel is allowed wide latitude in defending a client and should use his or her best judgment in matters of trial strategy. *State v. Williamson*, 877 S.W.2d 258, 262 (Mo.App.1994). "[C]ourts reviewing such claims should refrain from employing hindsight when reviewing counsel's conduct at trial." *Id.* Even if reasonable trial strategy is unsuccessful, counsel cannot be deemed ineffective. *State v. Dees*, 916 S.W.2d 287, 301 (Mo.App.1995); *State v. Anthony*, 881 S.W.2d 658, 661 (Mo.App. 1994).

*State v. Maddix*, 935 S.W.2d 666, 671 (Mo. App.1996). We cannot now, with the benefit of hindsight, speculate as to how appellant's trial counsel might have prevented the admission of certain evidence, since, overall, the record reflects a reasonable trial strategy. *Id.* In examining the complained-of evidence, we find that the sum of appellant's allegations of error pertain to evidence that was admissible as relevant to his alibi defense, and that the remainder of the evidence was not prejudicial because its exclusion would not have changed the result of the trial because of overwhelming evidence of appellant's guilt. *Clark*, 925 S.W.2d at 879–80.

Appellant's next contention is that his trial counsel was ineffective because he submitted defective alibi instructions is also couched in terms of "inadequate preparation for trial." A jury instruction that violates the Notes on Use does constitute error, but not error entitling movant to relief unless it was prejudicial. *State v. Lawson*, 876 S.W.2d 770, 776 (Mo.App.1994), *overruled on other grounds; State v. Carson*, 941 S.W.2d 518 (Mo. banc 1997). Appellant contends that his trial counsel's incomplete description in his alibi instructions of the location and time of the crimes in question was prejudicial because it could have been confusing to the jury as to whether the time and location described in the alibi instructions were the same as those which were described for the offenses charged.

MAI–CR3d 308.06, the alibi instruction, requires counsel to "briefly describe the place where the evidence shows the offense was committed, and [to] state date and time as submitted in verdict directing instruction." Our review of the alibi instructions here reveals that they sufficiently complied with the Notes on Use in that appellant's alibi instructions mirrored the State's verdict directors. However, even assuming, *arguendo,* that the instructions did not sufficiently comply with the Notes on Use, appellant does not sufficiently allege a basis for relief for ineffective assistance of counsel in that from our review of the record, we do not believe that any jurors could have been misled as to the time and location in appellant's alibi instructions being different from the time and location of crimes alleged in the State's verdict directors.

## C. Failure to Properly Conduct Voir Dire

In sub-point C, appellant alleges that his trial counsel was ineffective in conducting the voir dire. Specifically, he makes two contentions: (1) his trial counsel's voir dire examination was ineffective because he asked only two questions and because his trial counsel failed to adequately communicate with him; and (2) his trial counsel failed to challenge the State's use of peremptory strikes to remove two prospective African–American jurors.

As to the voir dire examination, this court thoroughly discussed the issue of jury selection as the basis for a Rule 29.15 motion in *State v. Pierce,* 927 S.W.2d 374, 377–78 (Mo.App.1996). In *Pierce,* we held that generally, improper jury selection is trial court error that is not a cognizable claim under Rule 29.15. However,

> improper jury selection may be advanced for the first time in a postconviction proceeding if the defendant shows that he had no knowledge of the improper jury selection process until after his trial. Rule 29.15, citing *Smith v. State,* 684 S.W.2d 520 (Mo.App.1984).

*Pierce,* 927 S.W.2d at 377. Here, the record indicates that appellant was present during the voir dire and did not object. Thus, he cannot now claim that he was unaware of alleged deficiencies in his trial counsel's voir dire examination. *Id.*

As to appellant's claim that his trial counsel failed to object when the State used peremptory strikes to remove two African–American jurors from the venire, we find that appellant has not sufficiently pled facts to entitle him to postconviction relief for his trial counsel's failure to raise a *Batson* [2] objection. *State v. Harris,* 908 S.W.2d 912, 916 (Mo.App.1995). Specifically, appellant did not plead facts regarding the racial composition of the venire panel. *Id.* Because we have no information from which to conclude whether a *Batson* challenge would have been successful, appellant has not demonstrated that he has been prejudiced, and it would be speculation to convict the trial court of error. *Driver,* 912 S.W.2d at 55. Moreover, "[t]o be entitled to a presumption of prejudice resulting from a defense counsel's ineffective assistance during the jury selection process, a post-conviction movant must show that a biased venireperson ultimately served as a juror." *Pierce,* 927 S.W.2d at 377. Here, appellant does not contend that any of the jurors who served on his jury were biased against him. Because appellant does not sufficiently allege facts that he has been prejudiced by his trial counsel's conduct, his claim is rendered ineligible for postconviction relief on this basis. *Harris,* 870 S.W.2d at 814.

## D. DNA Evidence

In sub-point D, appellant alleges that his trial counsel was ineffective in his handling of the DNA evidence in the case. He alleges that his trial counsel was ineffective for: (1) failing to withdraw from the case and allowing the public defender to be appointed, because the public defender would have had the resources to hire a DNA expert; and (2) failing to counter the DNA evidence introduced at trial, either because he did not hire a defense DNA expert or because he did not adequately cross-examine

---

2. *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

the State's DNA expert. The fact that appellant's trial counsel did not either seek withdrawal from the case so that the public defender could hire a DNA expert, or hire a DNA expert himself, is not sufficient to entitle appellant to postconviction relief. Our appellate courts have held that attorneys may decide the evidence and witnesses to use at trial as a matter of trial strategy. *State v. White*, 870 S.W.2d 869, 875 (Mo.App.1993), citing *Leisure v. State*, 828 S.W.2d 872, 875 (Mo. banc 1992), *cert. denied*, 506 U.S. 923, 113 S.Ct. 343, 121 L.Ed.2d 259 (1992). As such, the attorney's decision making is "virtually unchallengeable." *White*, 870 S.W.2d at 875.

We find *State v. Davis*, 814 S.W.2d 593, 603–04 (Mo. banc 1991), *cert. denied*, 502 U.S. 1047, 112 S.Ct. 911, 116 L.Ed.2d 812 (1992), to be persuasive here. In that case, the movant also alleged that his trial counsel was ineffective for not obtaining expert witnesses to challenge the reliability of the State's DNA evidence. There, the Court held:

> When a movant claims ineffective assistance of counsel for failure to locate and present expert witnesses, he must show that such experts existed at the time of trial, that they could have been located through reasonable investigation, and that the testimony of these witnesses would have benefited movant's defense. *See Childress–Bey v. State*, 779 S.W.2d 697, 699 (Mo.App.1989); *Williams v. State*, 782 S.W.2d 685, 686 (Mo.App.1989)

*Davis*, 814 S.W.2d at 603–04. The Court went on to note that the movant had failed to "name or suggest an expert who could have testified on his behalf at trial." *Id.* at 604. Here, as in *Davis*, appellant does not identify in his motion a potential DNA expert his attorney might have called.

■ Appellant next contends that his trial counsel was ineffective for failing to call a defense DNA expert on his behalf, because if he had, an expert witness would have refuted the testimony of the State's expert. The law is well settled that in order for the failure to call an expert witness to be ineffective assistance of counsel, the movant must allege and prove that the expert would have

provided a viable defense. *State v. Baldridge*, 857 S.W.2d 243, 257 (Mo.App.1993). Because appellant here only alleges that a defense expert would have refuted the evidence of the State's expert, he has not carried his burden and does not allege sufficient grounds for ineffective assistance of counsel. *State v. Day*, 859 S.W.2d 194, 196 (Mo.App. 1993). Further, appellant's argument that he needed his own experts to counter the State's scientific evidence rather than rely on counsel's ability to impeach the State's experts on cross-examination relies on the notion that DNA evidence is too complex for attorneys to sufficiently understand in order to prepare an adequate defense. *State v. Huchting*, 927 S.W.2d 411, 419–20 (Mo.App. 1996).

■ As to appellant's allegation that his trial counsel failed to adequately cross-examine the State's DNA expert, this contention is not a cognizable claim for ineffective assistance of counsel. The extent of cross-examination is almost always a matter of trial strategy and must be left to the judgment of counsel. *State v. Newson*, 898 S.W.2d 710, 717 (Mo.App.1995). Further, the record refutes appellant's claim, as his trial counsel extensively questioned the State's expert witness as to the DNA evidence. Because appellant's trial counsel had a great deal of discretion as to the method in which he chose to conduct his cross-examination, and the record reveals no major deficiencies in his manner of doing so, we cannot convict the trial counsel of error for ineffective assistance of counsel with respect to the DNA evidence in the case.

### E. Failure to Advise Appellant of State's First Plea Offer

■ In his final sub-point for postconviction relief, appellant contends that his trial counsel was ineffective for failing to convey to him a plea offer from the State of twenty-five years imprisonment on Count I and five years imprisonment on Counts II and III, to run concurrently with each other but consecutive to Count I, for a total of thirty years imprisonment. The record indicates that the State made this offer when appellant was represented by the public defender, but be-

fore his private trial counsel made an entry of appearance.

■ Appellant correctly cites *State v. Stillings,* 882 S.W.2d 696, 704 (Mo.App.1994), for the proposition that when appellants have stood trial and seek postconviction relief on the grounds of ineffective assistance of counsel for failure to relay a prosecutor's plea offer, they have the burden of showing with a "reasonable probability" that they would have accepted the offer instead of standing trial. Here, appellant alleged that he would have accepted the State's plea offer had he known of it before trial and was thereby prejudiced, because he would have been required to serve a lesser sentence under the plea agreement than under the sentence actually imposed.

The State rejects appellant's claim on two grounds. It first contends that the plea offer could not be accepted, as a matter of law, because the State's plea offer of five years for first-degree robbery would have been less than the minimum sentence of ten years, §§ 569.020; 588.011.1(1), and there is no evidence in the record that the State had offered to reduce it to a lesser charge. Thus, the State argues that appellant was not prejudiced by the failure of his trial counsel to communicate the plea offer, in that even if he had been so advised, the court could not have accepted it. However, based on the record, it is impossible to discern whether the State, in making the plea offer, had agreed to reduce the charge of first-degree robbery to second-degree robbery, for which the five-year sentence in the plea agreement would be permitted. Thus, we find appellant pled facts constituting ineffective assistance that are not conclusively refuted by the record entitling him to an evidentiary hearing.

The State's second argument is also without merit. The State contends that appellant's allegation of error is deficient because he did not properly allege prejudice in his motion in that he failed to allege that the trial court would have accepted the plea agreement. However, we find that appellant did plead sufficient facts to this effect. Appellant contends that if he had been advised of the plea agreement, he would have accepted it, he would have been sentenced in accordance with the plea agreement, and he would be serving a lesser sentence than he is now. It goes without saying that a defendant cannot serve a lesser sentence under a plea agreement unless the court actually accepts the plea agreement. From this allegation of prejudice, we find it is implicit that the appellant is alleging that the trial court would have accepted the plea agreement.

We find that appellant sufficiently alleged a claim of ineffective assistance of counsel based on his trial counsel's failure to advise him of a plea agreement, and the record does not conclusively refute his claim. Thus, we hold that the motion court clearly erred in denying appellant's Rule 29.15 motion without an evidentiary hearing as to ineffective assistance of counsel on his claim of his trial counsel's failure to communicate a plea offer, and reverse and remand for an evidentiary hearing on this claim.

## II. Direct Appeal

On direct appeal, appellant claims that the trial court committed plain error by failing to exclude, *sua sponte,* statements he made to Detective Wallace. He alleges that the trial court should have excluded a statement he made to Detective Wallace before being *Mirandized,* wherein he asked if he could see the gas station surveillance videotape. He also alleges that the trial court erred in failing to exclude statements he made after waiving his *Miranda* rights, because these statements were tainted by his prior statement to Detective Wallace about the surveillance videotape. We disagree.

■ When appellants fail to preserve their grounds for appeal, our appellate role is limited to a review for plain error under Rule 30.20. *State v. Brown,* 902 S.W.2d 278, 284 (Mo. banc 1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 679, 133 L.Ed.2d 527 (1995); *State v. Moriarty,* 914 S.W.2d 416, 421 (Mo.App. 1996). As such, unless a claim of plain error "facially establishes grounds for believing that 'manifest injustice or miscarriage of justice has resulted,'" we will decline to exercise our discretionary review of the claimed error. *Brown,* 902 S.W.2d at 284.

In *Miranda v. Arizona*, 384 U.S. 436, 473–74, 86 S.Ct. 1602, 1627–28, 16 L.Ed.2d 694 (1966), the Supreme Court held that after an individual in custody has been given the *Miranda* warnings, "[i]f the individual indicates in any manner that he wishes to remain silent, the interrogation must cease until an attorney is present." At that point, the police are forbidden to engage in any interrogation, either through express questioning or "any words or actions ... that the police should know are reasonably likely to elicit an incriminating response from the suspect." *State v. Isaiah*, 874 S.W.2d 429, 436 (Mo.App.1994), citing *Rhode Island v. Innis*, 446 U.S. 291, 301, 100 S.Ct. 1682, 1689–90, 64 L.Ed.2d 297 (1980).

Appellant first alleges that his *Miranda* rights were violated when, after the police lineup, he asked Detective Wallace if he could see the gas station surveillance videotape. She told him that he could not without waiving his right to an attorney, which he had previously invoked. Appellant then waived his right to an attorney and agreed to make a statement. The question, then, is whether appellant's request was an "incriminating" response resulting from police "interrogation." We hold that it is not. Appellant merely asked to see the videotape after overhearing Detective Wallace's conversation with another officer. We find that this statement is in no way incriminating. Because appellant's request was not incriminating, that portion of his conversation with Detective Wallace prior to being *Mirandized* was not a custodial interrogation, and as such, the fact that he was not *Mirandized* is of no consequence. *Isaiah*, 874 S.W.2d at 436.

Appellant next contends that the statements he made after being properly *Mirandized* were tainted by his prior statement concerning the surveillance tape. He claims that these statements resulted from his original statement concerning whether he was allowed to view the surveillance videotape, which he made before being properly *Mirandized*. We disagree. Inasmuch as we have already held, *supra*, that appellant's pre-*Miranda* statement regarding the surveillance videotape did not violate *Miranda*, then it is legally impossible to argue taint from that statement as to his subsequent statements. This being the case, and because his statements made subsequent to his inquiry concerning the surveillance videotape were made after a proper *Miranda* warning and waiver, the statements in question were admissible. *Isaiah*, 874 S.W.2d at 436. Therefore, we hold that appellant's *Miranda* rights were not violated in either instance alleged.

Point denied.

### Conclusion

The order denying appellant's Rule 29.15 motion is affirmed, except as to his claim of ineffective assistance of counsel as to his trial counsel's failure to communicate the State's plea offer, which is reversed and the cause remanded for an evidentiary hearing on this claim only. The trial court's judgment of convictions and sentences is affirmed.

All concur.