**Vincent BRIGHT, Movant–Appellant,**

v.

**STATE of Missouri, Respondent–Respondent.**

No. 22752.

Missouri Court of Appeals,
Southern District,
Division One

Aug. 12, 1999.

Motion for Rehearing and Transfer Denied Aug. 31, 1999.

Mark A. Grothoff, Asst. Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Breck K. Burgess, Atty. Gen., Jefferson City, for respondent.

KENNETH W. SHRUM, Judge.

This is a post-conviction case filed by Vincent Bright (Movant) pursuant to Rule 29.15. Movant seeks to have his conviction for second degree drug trafficking (class B felony, § 195.223 RSMo Cum.Supp.1993) set aside. In part, Movant alleges that his trial lawyers were ineffective for failing to "adequately advise [Movant] concerning the consequences of accepting or rejecting a plea offer from the State." The motion

court denied relief after an evidentiary hearing. This appeal followed. We affirm.

Appellate review of a denial of a Rule 29.15 motion is limited to a determination of whether the findings and conclusions of the motion court are clearly erroneous. Rule 29.15(k); *State v. Ervin*, 835 S.W.2d 905, 928 (Mo.banc 1992). "The ... findings and conclusions are clearly erroneous only if, after a review of the entire record, the appellate court is left with the definite and firm impression that a mistake has been made." *Id.* at 928[42].

To prevail on a claim of ineffective assistance of counsel, a movant must show, first, that trial counsel failed to exercise the customary skill and diligence of a reasonably competent attorney under similar circumstances, and, second, that counsel's deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687–88, 104 S.Ct. 2052, 2064–65[5], 80 L.Ed.2d 674 (1984). This prejudice is shown where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S.Ct. at 2068.

In reviewing a Rule 29.15 judgment, Missouri appellate courts indulge in a strong presumption that defense counsel's conduct falls within the wide range of reasonable professional assistance. *Sanders v. State*, 738 S.W.2d 856 (Mo.banc 1987) (citing *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065, 80 L.Ed.2d at 674 (1984)). Our "scrutiny of counsel's performance must be highly deferential," and the strong presumption serves to eliminate "the distorting effects of hindsight." *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065.

A detailed account of the facts underlying Movant's conviction is contained in *State v. Bright*, 963 S.W.2d 423, 425–30 (Mo.App.1998). Briefly, they show that on November 30, 1993, a member of the Missouri Highway Patrol conducted a consent search of a Chevrolet car occupied by Amy Guajardo and Caramel Calway and found marijuana therein. Guajardo and Calway provided officers with information that prompted police to stop a Buick driven by Cornelius Williams. Movant was a passenger in the Buick. At trial, the State presented the testimony of Guajardo and Calway to show that Movant had been "in charge of the operation to move the drugs from El Paso to Detroit." *See Bright*, 963 S.W.2d at 431–32. The jury found Movant guilty, assessed his punishment at fifteen years, and the resulting judgment and sentence were affirmed in *Bright*, 963 S.W.2d 423.

Movant then sought post-conviction relief under Rule 29.15. His motion alleged, *inter alia*, that his trial lawyers were constitutionally ineffective because they "gave him no advice concerning the consequences of accepting the [guilty-plea] offer vis-a-vis electing to proceed with a jury trial."

During the hearing on Movant's post-conviction motion, the parties stipulated that "somewhere around February 5th, 1997, [Movant] was offered a sentence of six years" if he would plead guilty to a class B felony of drug trafficking or seven years if he would plead guilty to a class C felony of drug possession. Under either of the alternatives, the State opposed probation.

Movant acknowledged that one of his trial lawyers, Marc Edmondson, "brought me the plea [offer]." He asserted, however, that neither Edmondson nor his other trial lawyer, Ann Lasswell, ever went "into a discussion about the consequences if [he] accepted the offer." When asked if either of his lawyers ever told him "this was a good offer, a bad offer," Movant answered, "No, they never said nothing like that." Movant also testified that lawyer Lasswell told him he "had a good chance to win the trial" and, based on what his lawyers said to him, he (Movant) "never thought [he] would be convicted." Continuing, Movant

testified that if his lawyers had told him the State had "a good case against [him], they had sufficient evidence to convict [him]," he would have accepted either of the guilty-plea offers. When asked, "Why would that be?" Movant answered:

> "Because I'm saying they would advise me we had no chance, the only chance I did have was in their hands by them representing me, I don't see how I could have even went to trial, you know, you know. I wasn't relying on what I knew. I was relying [on] what they knew."

On the other hand, Movant conceded that his lawyers never guaranteed him he would be acquitted and that he always knew there was a chance of being convicted if he went to trial.

One of Movant's trial lawyers, Marc Edmondson, testified that there were ongoing plea bargain discussions but that Movant was only "interested in an offer that would guarantee him probation similar to what the other defendants in the case got." Edmondson testified that he conveyed the prosecutor's offers to Movant and "we talked about ... the probability of winning at trial and whether or not he wanted to go ahead and take the state's offer several times." In a similar vein, Edmondson testified that he talked with Movant about the strengths and weaknesses of the prosecutor's case several times, including the fact that the prosecutor "had the two girls that had pled guilty already coming in to testify against him." When asked if he did or did not recommend to Movant that he take the plea offer, Edmondson replied:

> "I don't think I verbalized in so many words you know, 'You should take this plea....' I think I made it quite clear subtly that it didn't look good if we didn't win on these motions to suppress and these girls showed up and said he was involved."
>
> ....
>
> "Q. [To Edmondson] ... I'm not asking exactly the words you used. I'm,

just saying, did you discuss that with him?"

"A. The consequences [of going to trial versus pleading guilty]?"

"Q. Yes."

"A. I typically do and I think I did in his case."

During cross examination, Edmondson testified:

> "Q. Mr. Edmondson, ... when I hear your response 'I typically do and I think I did in this case,' I take it that you don't really have any independent recollection of exactly what was told to him about the consequences?"
>
> "A. Well, as far as specific without looking at my notes, I don't have my file anymore. You have my file. You told me you didn't see notes in there but I'm sure you're the one that told me what the state's offer was. I guess you got that information from Vincent [Movant] ... when we talked. I'm sure we talked about it. I just know that we did. And like I said, what I recall is he wanted an offer that involved guaranteeing him probation and the state would never do that."

The motion court issued findings of fact and conclusions of law denying Movant's request for post-conviction relief. This appeal followed.

■ Movant's single point relied on asserts that reversal is mandated because the record clearly shows Movant was denied effective assistance of counsel as his trial lawyers failed "to adequately advise" him concerning the consequences of accepting or rejecting the State's plea offer. Movant argues that prejudice resulted because the inadequate advice led him to reject the plea offer; consequently, he was "sentenced to 15 years imprisonment rather than the 6 or 7 years offered by the State." Movant cites two cases, *State v. Colbert,* 949 S.W.2d 932 (Mo.App.1997), and *Boria v. Keane,* 99 F.3d 492 (2nd Cir.1996), to support his arguments.

In *Colbert*, the movant's post-conviction motion was denied without an evidentiary hearing. Movant alleged his trial lawyer was ineffective for, *inter alia*, failing to tell him of a plea offer whereby he would have received less time in prison than he did by going to trial. Continuing, the movant alleged he would have accepted the State's plea offer had he known of it and was thereby prejudiced by his lawyer's failure to tell him of the offer. The western district reversed, noting that the record did not refute the movant's claim that his trial counsel failed to advise him of a plea offer. Consequently, the court held movant was entitled to an evidentiary hearing on that issue. 949 S.W.2d at 947.

In *Boria*, 99 F.3d 492, a federal appeals court held that the appellant had been deprived of his right to effective assistance of counsel because his defense lawyer failed to advise him of the perils of rejecting a plea bargain. *Id.* at 496–97. The *Boria* court characterized the record as establishing "beyond peradventure that [defense counsel] *never gave his client any advice or suggestion* as to how to deal with the People's offered plea bargain." *Id.* at 497–498 (emphasis added).

Movant says the facts here are analogous to those in *Boria* and *Colbert* and that those cases compel a finding that his lawyers were ineffective. We disagree for two reasons.

First, *Boria* is not binding on this court and *Colbert* is not on point. Unlike *Colbert*, where defense counsel never told the accused of the plea offer, Movant's lawyer testified that he not only told Movant about the plea offer but also repeatedly discussed with Movant the consequences of going to trial versus accepting the plea offer and pleading guilty. The motion court specifically found that it believed Edmondson's testimony, which was its prerogative.

Second, we find no Missouri authority that supports Movant's claim, and even if we were inclined to follow *Boria*—a choice we need not and do not make—this is not a case where trial counsel gave "no advice or suggestion" as to whether Movant should accept the plea offer. We find in this record ample evidence to support the trial court's finding that Movant's trial lawyers adequately advised him concerning the plea offer extended by the State. The findings of the motion court are not clearly erroneous. This court is not left with a definite and firm impression that the motion court made a mistake. Point denied.

The judgment is affirmed.

CROW, P.J., PARRISH, J., concur.