**Joseph Leo BOYD, Jr., Appellant,**

v.

**STATE of Missouri, Respondent.**

**No. 27636.**

Missouri Court of Appeals,
Southern District,
Division Two.

Nov. 21, 2006.

---

11. Although the Commission's legal conclusions and analysis may not bind us, we may still consider them if persuasive.

Irene Karns, Columbia, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., and Daniel N. McPherson, Asst. Atty. Gen., Jefferson City, for Respondent.

ROBERT S. BARNEY, Judge.

Appellant Joseph Leo Boyd, Jr. ("Movant") appeals from the motion court's denial without an evidentiary hearing of his second amended Rule 24.035 motion to vacate, set aside or correct judgment and sentence.[1] Movant alleges five points of motion court error. We affirm the judgment of the motion court.

The record reveals Movant was charged by Information on June 20, 2002, with one count of the Class D felony of unlawful use of a weapon, a violation of section 571.030.1(4); one count of the Class C felony of assault in the second degree, a violation of section 565.060; and one count of the felony of armed criminal action, a violation of section 571.015.[2] Thereafter, on May 13, 2003, pursuant to a plea agreement, Movant pled guilty to the aforementioned charges with the understanding that the State would recommend concurrent sentences of five years on the unlawful use of a weapon charge, ten years on the assault charge, and five years on the armed criminal action charge. Further, the State agreed not to pursue prosecuting Movant on a federal firearms charge if Movant appeared at his sentencing.[3]

At the guilty plea hearing, Movant stated that he understood the charges against him; that he understood the terms of his plea agreement; that he understood he had a right to proceed to trial; and that he understood the rights he was waiving by pleading guilty. Movant identified the plea agreement for the court; noted that he had signed the document with his own hand; and stated that it contained all the promises that had been made to him. Movant also stated that he "had sufficient time to talk with [his counsel] about this case;" that he "told [his counsel] everything [he] kn[e]w about it, including all the facts and witnesses so [his counsel] could prepare a defense and give [Movant] advice ...;" and that he was "completely satisfied with [his counsel's] services."

The State then set out the factual basis for the guilty plea.

The State recited that on July 29, 2001, while in his van parked outside of the Forest Park Apartments in Springfield, Missouri, Movant came into contact with Roy Jones ("Mr.Jones") and Raymond King ("Mr.King"). There was an argument among the three men and Movant "displayed" a "high point .9 millimeter handgun." Movant pointed the gun at Mr. King and "Mr. Jones grabbed the firearm." Movant and Mr. Jones then wrestled with each other over control of the gun and the gun was discharged. Mr. King received a powder burn on his right arm where he was grazed by the bullet.

A neighbor, Karen Adkins ("Mrs.Adkins"), was taking her trash out when the incident occurred. She reported to police that "she observed [Movant] with one of

---

**1.** All rule references are to Missouri Court Rules (2006) and all statutory references are to RSMo 2000.

**2.** Additionally, Movant was charged as a prior offender under section 558.016 and also as a persistent offender per sections 558.016 and 557.036.

**3.** The assistant prosecuting attorney handling Movant's case in the instant matter was also designated as a "Special Assistant United States Attorney" on the plea agreement paperwork. The plea agreement stated that "[i]f defendant fails to appear for sentencing ... [t]he government will also be free to pursue the federal prosecution waived in paragraph 8." Paragraph 8 of the plea agreement stated, "Neither [the] State nor Federal Government will pursue federal firearms prosecution for events arising during this incident...." The assistant prosecuting attorney informed the court that he "has authority on behalf of the United States government to bind them to ... the plea agreement...."

the men in a headlock and the gun pointed down at their head." Mrs. Adkins heard a pop and ran back into her apartment to tell her husband, Darryl Adkins ("Deputy Adkins"), a Greene County deputy, about the incident.

When Deputy Adkins ran out to investigate, he saw that Movant "still had the firearm in his hand." According to Mrs. Adkins, Movant "[w]ould not follow the directions of [Deputy Adkins]; and, in fact, put the van into gear and drove forward striking a retaining wall and nearly hitting [a woman], who was in front of the van, hiding to avoid being injured by the gun." Movant was thereafter taken into custody. In Movant's possession, Officer Steve Magruder discovered the handgun; "live rounds of ammunition ...;" "a spent shell casing;" and "a bullet fragment that was found inside the van." Officer Morris Taylor ("Officer Taylor") assisted in Movant's arrest and read Movant his *Miranda*[4] rights. Movant informed Officer Taylor that "he had brought the gun to the apartments that day, and that he had fired a shot up into the air."

After the State recited the factual basis for the plea, Movant's counsel agreed the State had indeed made a submissible case. Movant confirmed that he was in fact agreeing to the State's facts as recited. He stated that he was "[p]leading guilty" and that he had committed the crimes with which he was charged. Thereafter, Movant expressly pled guilty to the crimes listed on the Information and the trial court convicted him of those crimes.

At the sentencing hearing on June 13, 2003, the court sentenced Movant to "five years in the Missouri Department of Corrections on Count I, ten years on Count II, and five years on Count III as a prior and persistent offender to run concurrent to

each other." Thereafter, Movant again confirmed to the court that his counsel had been present at his guilty plea; that his counsel did "everything [he] asked him to do before [he] pled guilty;" and that his counsel did not do anything "that [he] asked him not to do before [he] pled guilty." Then, the following colloquy occurred:

The Court: Um, did you tell [your counsel] all the facts and witnesses you knew about so he could prepare a defense and give you advice on this case?

Movant: Yes, sir, I did. Just one problem I got with it.

The Court: Okay.

Movant: Your honor, it still wasn't mine. I'm going to prison for somebody else.

The Court: Okay. But, I mean, that was a choice—you may say that. But, I mean, when we did the plea we talked about that, didn't we?

Movant: Yeah, we did. It's either I take this or loose [sic] my whole life. I can't gamble like that. Because I've been to prison before, and I know how the system is. And I can't take that chance.

The Court: Okay. Now, other than the plea agreement did [your counsel] promise you anything or threaten you in any way to have you plead guilty?

Movant: No, sir, he did not.

The Court: Did he ever tell you to lie to me when you appeared in court?

Movant: No, sir, he did not.

The Court: Are you still—do you still have these problems with his reputation [sic] of you?

Movant: (Shakes head.) I ain't never been a lawyer. I—sir, to be honest with you, I don't have a problem with it. I think he handled things to the best of

4. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct.   1602, 16 L.Ed.2d 694 (1966).

his abilities. But I don't know that much about the law. So, therefore, on the other hand, I really can't say.

The Court: Okay. But I know that—you know, this case may not have turned out the way you wanted it to. But I'm just saying as far as [your counsel], you—

Movant: Yes, sir. Yes. As far as [my counsel] goes and as far as my knowledge, I feel he handled it the best he could.

Thereafter, the court found "probable cause to believe [Movant was] provided effective assistance of counsel."

On July 16, 2003, Movant filed a *pro se* Rule 24.035 motion. Thereafter, the motion court appointed counsel to represent Movant. An amended Rule 24.035 motion was filed on November 13, 2003, by his appointed counsel and a *pro se* second amended motion was filed by Movant on February 4, 2004. On September 28, 2004, the State filed a motion to dismiss Movant's Rule 24.035 motions without an evidentiary hearing.

On February 27, 2006, the motion court granted the State's motion to dismiss Movant's Rule 24.035 motions without an evidentiary hearing. This appeal by Movant followed.

■ Appellate review of the denial of a Rule 24.035 motion for post-conviction relief is limited to a determination of whether the motion court's findings of fact and conclusions of law are clearly erroneous. Rule 24.035(k); *Ross v. State*, 48 S.W.3d 667, 669 (Mo.App.2001). " 'The findings and conclusions are deemed erroneous if after reviewing the record, this [C]ourt is left with the definite and firm belief that a mistake has been made.' " *Goings v. State*, 1 S.W.3d 600, 601 (Mo. App.1999) (quoting *Saffold v. State*, 982 S.W.2d 749, 752 (Mo.App.1998)). We presume that the motion court's findings and conclusions are correct. *Butts v. State*, 85 S.W.3d 132, 134 (Mo.App.2002).

■ Rule 24.035(h) provides that a movant will receive an evidentiary hearing unless "the files and records of the case conclusively show that the movant is entitled to no relief. . . ." In order for a Rule 24.035 movant to be entitled to an evidentiary hearing, the movant must satisfy three requirements: "(1) he must allege facts and not conclusions, which, if true, would warrant relief; (2) the allegations must not be refuted by the record; and (3) the matters of which he complains must have resulted in prejudice to his defense." *Azbell v. State*, 144 S.W.3d 863, 869 (Mo. App.2004). If any of these three factors is absent, the motion court may deny an evidentiary hearing. *Wedlow v. State*, 841 S.W.2d 214, 216 (Mo.App.1992).

■ To prevail on a claim of ineffective assistance of counsel where a movant has entered a plea of guilty, a "movant must show his [counsel's] representation fell below an objective standard of reasonableness and that, as a result, he was prejudiced." *Cupp v. State*, 935 S.W.2d 367, 368 (Mo.App.1996); *see Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "Movant must show, but for the conduct of his trial attorney about which he complains, he would not have pleaded guilty but would have insisted on going to trial." *Cupp*, 935 S.W.2d at 368. Where, as here, there is a negotiated plea of guilty, a claim of "ineffective assistance of counsel is immaterial except to the extent it impinges upon the voluntariness and knowledge with which the guilty plea was made." *Id.*

Movant's first, second and third points relied on assert the motion court erred in denying his Rule 24.035 motion without an evidentiary hearing "because [Movant] stated a claim not refuted by the record

that ... his plea was involuntary, induced by counsel's failure to investigate or otherwise prepare for trial." In his first point relied on, Movant alleges his counsel was ineffective "in failing to depose or otherwise investigate evidence available through Dr. Thomas Corsolini, who would have testified that [Movant's] disability would have prevented him from putting the alleged victim in a headlock...." Movant's second point relied on maintains his counsel was ineffective "in failing to investigate evidence available through the testimony of Jamesetta Gary, that [Mr.] King and [Mr.] Jones were harassing [Movant] during the days before the incident, which would have supported a claim of self-defense." In his third point relied on Movant maintains his counsel was ineffective for "failing to investigate Henry Hines as a potential witness." According to Movant, the aforementioned potential witness "would have testified that [Mr.] King and [Mr.] Jones were in a dispute over a debt with [Movant] before the incident, and [Movant] refused Mr. Hines' offer of a shotgun before going to meet with them, which testimony would have shown [Movant's] intent to settle the matter peacefully...." For ease of analysis, we shall address Movant's Points One, Two and Three together.

▇▇▇ By pleading guilty, a defendant generally waives "any future complaint [he] might have about trial counsel's failure to investigate his case." *Simmons v. State*, 100 S.W.3d 143, 146 (Mo.App.2003). "Counsel's failure to interview witnesses is rarely sufficient to support a claim of ineffective assistance of counsel." *Evans v. State*, 921 S.W.2d 162, 164 (Mo.App.1996). "In fact, a guilty plea renders a claim of ineffective assistance of counsel irrelevant except to the extent that [it] affects the voluntariness and understanding with which the movant made his plea." *Be-*

*quette v. State*, 161 S.W.3d 905, 907 (Mo. App.2005).

▇▇▇ "When a movant pleads guilty and then affirmatively states in court that he is satisfied with the performance of his trial counsel, he is not then entitled to an evidentiary hearing on a claim that counsel was ineffective for failure to investigate, because such a claim is refuted by the record." *Simmons*, 100 S.W.3d at 146. At the guilty plea hearing in the present matter, Movant stated that he "had sufficient time to talk with [his counsel] about this case;" that he "told [his counsel] everything [he] kn[e]w about it, including all the facts and witnesses so [his counsel] could prepare a defense and give [Movant] advice ...;" and that he was "completely satisfied with [his counsel's] services." Thereafter, at the sentencing hearing, Movant again confirmed that his counsel had been present at his guilty plea; that his counsel did "everything [he] asked him to do before [he] pled guilty;" that his counsel did not do anything "that [he] asked him not to do before [he] pled guilty;" that Movant told his counsel "all the facts and witnesses [he] knew about so [his counsel] could prepare a defense and give [him] advice on this case;" that his counsel did not "promise [him] anything or threaten [him] in any way to have [him] plead guilty;" that his counsel never told him to lie to the court; and that his counsel "handled things to the best of his abilities" and "the best he could."

Based on the foregoing, Movant's plea was voluntary and his claim that his counsel failed to investigate witnesses was refuted by Movant's statements of satisfaction with his counsel's services. *Simmons*, 100 S.W.3d at 146; *Bequette*, 161 S.W.3d at 907. Movant has not established he was entitled to an evidentiary hearing, and the motion court did not err in denying him

one. *Azbell*, 144 S.W.3d at 869. Movant's Points One, Two and Three are denied.

■ In his fourth point on appeal, Movant asserts the motion court clearly erred in denying his Rule 24.035 motion without an evidentiary hearing

> in that counsel failed to tell him until the day of trial that the State was threatening to prosecute him in federal court for being a felon in possession of a firearm, which carried a sentence of twenty years without parole, if he did not accept the plea offer. [Movant's] plea was not voluntary in that it was the product of his panic in having to decide, without time for reflection, whether he should waive his right to trial in the instant case to avoid risking a much longer federal sentence.

■ It has long been held that a guilty plea must be a voluntary expression of the defendant's choice, and a knowing and intelligent act done with sufficient awareness of the relevant circumstances and likely consequences. *Bequette*, 161 S.W.3d at 907. " 'A plea of guilty is not made voluntarily if the defendant is misled, or is induced to plead guilty by fraud or mistake, by misapprehension, fear, persuasion, or the holding out of hopes which prove to be false or ill founded.' " *Id.* (quoting *Drew v. State*, 436 S.W.2d 727, 729 (Mo.1969)).

Movant's claim that his plea was involuntary because his counsel advised him on the day of the guilty plea that he could face federal charges and that he did not have sufficient time to consider the ramifications of such an event, is not supported by the record.

Here, at the guilty plea hearing, the following occurred relating to the possibility of federal charges being filed against Movant:

> The Court: At 9:45 on June 13th we'll be sentencing. And if [Movant] fails to appear for sentencing the State will then—may then pursue the federal charges.
>
> Movant: You ain't got to worry. I'll be here.
>
> The Court: And if they do pursue those charges, you understand, the minimum is 230 some months?
>
> Movant: Two hundred forty-eight.
>
> The Court: 'Forty-eight'. It's 20 years without parole?
>
> Movant: I already know that.
>
> The Court: Okay.
>
> Movant: I will be here.
>
> The Court: And that would be probably in addition to this sentence.
>
> Movant: Exactly.
>
> The Court: Okay.

As seen above, Movant himself corrected the court regarding the length of his possible federal sentence. When the trial court advised Movant that he faced a "minimum [of] 230 some months" in federal custody, Movant replied that he was actually facing "[t]wo hundred forty-eight" months in federal custody. Additionally, he assured the court he was aware the federal sentence would be served after the charges he was currently facing and that he "already knew ..." he was facing 20 years in federal custody.

Further, when asked by the court if he understood the charges against him and the terms of the plea agreement, Movant stated,

> Uh, I understand I got five years on one count, ten years on another count, five years on another count. All those running in together with the ten years. So it would just be one ten years, and then they [are] not going to file [any] federal charges as long as I show up for sen-

tencing and do what I got to do, and waive probation.

Then, at the close of the plea hearing, the court again reminded Movant of the following terms of the plea agreement relating to the possibility of federal charges:

If you fail to appear [for sentencing] the plea of guilties will stand, but the plea agreement of 5/10/and 5 will go away; and I will have the full range of punishment available to me as well as the State will be able to file a federal charge, which may carry an additional 20 years on top of any sentence I give you. Do you understand that?

Movant confirmed that he "most definitely" understood the terms of the plea agreement.

Additionally, as stated previously, Movant stated that he understood the charges against him and the terms of the plea agreement; that he understood the rights he was waiving by pleading guilty; that he had reviewed the written plea agreement and signed it; and that the plea agreement contained all of the promises which had been made to him by his counsel and the State. Moreover, he informed the court he "had sufficient time to talk with [his counsel] about this case" and that he was "completely satisfied with [his counsel's] services." At no time did Movant inform the court that his counsel had only presented the plea agreement to him that day; that he felt his guilty plea "was the product of his panic in having to decide, without time for reflection, whether ..." he should plead guilty; or that his counsel had failed to give him the details regarding possible federal charges being filed against him.

Here, Movant's claim that his guilty plea was involuntary because his counsel did not timely advise him of the possibility of federal charges being filed against him such that he was not given sufficient time to consider the terms of the plea agreement is refuted by the record. Appellant has not alleged any fact, not refuted by the record, showing that counsel's performance did not conform to the degree of "skill and diligence that a reasonably competent attorney would have exhibited under similar circumstances...." *Patrick v. State*, 160 S.W.3d 452, 455 (Mo.App.2005). Further, Movant has not proven his guilty plea was not a knowing and intelligent act done with sufficient awareness of the relevant circumstances and likely consequences. *Bequette*, 161 S.W.3d at 907. The motion court did not err in denying Movant's Rule 24.035 motion without an evidentiary hearing. Point Four is denied.

In his fifth and final point relied on Movant asserts the motion court clearly erred in denying his Rule 24.035 motion without an evidentiary hearing because his "counsel did not advise [Movant] that the offer made by the State just after the preliminary hearing had expired."[5] He maintains his guilty plea was not knowing and voluntary "in that it was not an informed decision" because he was not told "that the more favorable offer had been retracted until the day of trial, [and] he had to make a rushed decision as to whether the ten-year offer was preferable to risking federal prosecution as well as a greater sentence on the Greene County charges if convicted after trial."

Here, Movant relies on *State v. Colbert*, 949 S.W.2d 932, 946 (Mo.App.1997), for the

---

5. Movant alleged in his amended Rule 24.035 that his counsel "failed to inform him that the plea offer he received after the preliminary hearing had an expiration date and would be withdrawn if he did not accept in the time period allowed." He asserted the plea offer was for "seven years." There is no support in the record for Movant's allegations relating to the purported seven-year plea offer.

proposition that "[w]here a postconviction movant alleges that counsel failed to timely advise him of an existing plea offer, he has stated a claim that if proven would result in relief." He asserts *Colbert* "should be extended to cases where, as here, counsel fails to timely advise his client that a favorable offer may be withdrawn, or has expired."

Movant's reliance on *Colbert* is misplaced for several reasons. Not only is *Colbert* a Rule 29.15 action instead of a Rule 24.035 action (involving a voluntary guilty plea to the charges propounded against Movant), but in *Colbert* the movant was convicted after a trial. *Id.* at 946. In *Colbert*, the movant alleged in his Rule 29.15 motion that he was never advised by his counsel that there had even been a plea offer, and "he would have accepted the State's plea offer had he known of it before trial and was thereby prejudiced, because he would have been required to serve a lesser sentence under the plea agreement than under the sentence actually imposed." *Id.*

In the present matter, and unlike *Colbert*, Movant *was* advised of the existence of the plea offer and was also advised as to its terms as evidenced by his assertion that the withdrawn plea offer included a seven year sentence. Additionally, unlike the movant in *Colbert*, Movant did not allege in his Rule 24.035 motion or in his appellate brief that he would have been willing to accept the earlier plea offer. Indeed, in the instant matter Movant actually *accepted* a subsequent plea bargain that constituted less of a sentence than he might have received had he gone to trial and been found guilty of the felony charges set out in the Information.

We have already found Movant was seasonably advised of the terms of the plea agreement; that he did, in fact, accept the plea agreement; and that his guilty plea entered per the terms of that plea agreement was knowingly and voluntarily made. As such, this Court fails to see how Movant could have been prejudiced by the expiration of a prior plea offer, especially in light of his failure to assert in his Rule 24.035 motion that he would have accepted that prior plea offer. It was Movant's burden to "allege[ ] facts, not conclusions, which, if true . . ." would support his claim for an evidentiary hearing. *Arnold v. State*, 70 S.W.3d 613, 615 (Mo.App.2002). He did not do so and his allegations are refuted by the record. *Azbell*, 144 S.W.3d at 869. The trial court did not err in denying Movant's Rule 24.035 motion without an evidentiary hearing. Point denied.

The judgment of the motion court is affirmed.

BATES, C.J., and LYNCH, J., concur.